IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **SOFTWARE RIGHTS ARCHIVE, LLC** <br><br> v. <br><br> **GOOGLE INC., YAHOO! INC., IAC SEARCH & MEDIA, INC., AOL, LLC, AND LYCOS, INC.** | Civil Case No. 2:07-cv-511 (TJW) |

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF STANDING**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. I

TABLE OF AUTHORITIES ......................................................................................... II

I. SUMMARY OF THE ARGUMENT ................................................................. 1

II. FACTS .................................................................................................................. 2

    A. The Inventors Assigned All Their Rights To Libertech ........................ 2

    B. Libertech (a.k.a. Site/Technologies/Inc.) Never Assigned Its Rights To Egger ............................................................................................ 3

    C. Egger's 2005 Assignment To Himself Was A Nullity And A Fraud ............................................................................................................. 5

    D. SRA Acquired No Rights From Egger But Nonetheless Relied On The Void 2005 Assignment ................................................................. 6

III. ARGUMENT ......................................................................................................... 8

    A. Applicable Law ............................................................................................ 8

    B. SRA And Egger Never Acquired The Patents-In-Suit ........................... 9

        1. The 1998 Assignment Did Not Transfer Title ............................. 9

        2. The 2005 Assignment Transferred No Rights ............................ 11

        3. No Document Grants SRA Title .................................................. 12

IV. CONCLUSION .................................................................................................... 12

# TABLE OF AUTHORITIES

**Federal Cases**

*Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24 (1923) ................................... 1

*Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003) ....................................................................... 10

*Enzo APA & Son, Inc. v. Geapag AG*, 134 F.3d 1090 (Fed. Cir. 1998) ........................................ 1

*FilmTec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568 (Fed. Cir. 1991) ........................................... 8

*Howery v. Allstate Ins. Co.*, 243 F.3d 912 (5th Cir. 2001) ............................................................ 9

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of CA, Inc.*, 248 F.3d 1333
    (Fed. Cir. 2001) ......................................................................................................... 8, 12

*Lans v. Digital Equip. Corp.*, 252 F.3d 1320 (Fed. Cir. 2001) ................................................. 8, 10

*LDM Techs., Inc. v. Rowen-Waters Group, LLC*, No. 02-73520, 2005 WL
    2449300 (E.D. Mich. Sept. 28, 2005) ......................................................................... 10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................... 9

*Quantum Corp. v. Riverbed Tech., Inc.*, No. C 07-04161 WHA, 2008 WL
    314490 (N.D. Cal. Feb. 4, 2008) .................................................................................. 2

*TM Patents, L.P. v. Int'l Bus. Machs. Corp.*, 121 F. Supp. 2d 349 (S.D.N.Y.
    2000) ............................................................................................................................ 12

**Federal Statutes**

11 U.S.C. § 1141 ............................................................................................................................ 2

35 U.S.C. § 261 ......................................................................................................................... 8, 9

35 U.S.C. § 281 ............................................................................................................................. 1

**Federal Rules**

Fed. R. Civ. Proc. 12(b)(1) ........................................................................................................... 1

**State Statutes**

Cal. Corp. Code § 1107(a) ....................................................................................................... 5, 11

Del. Code tit. 8, § 259(a) .......................................................................................................... 5, 11

Del. Code tit. 8, § 271 ................................................................................................................... 2

Defendants Google Inc., Yahoo! Inc., IAC Search & Media, Inc., AOL LLC, and Lycos, Inc. (collectively, "Defendants") move the Court to dismiss this action for patent infringement for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Plaintiff Software Rights Archive, LLC ("SRA") brought this action alleging that Defendants infringe U.S. Patent Nos. 5,544,352 (the "'352 patent"), 5,832,494 (the "'494 patent"), and 6,233,571 (the "'571 patent") (collectively "the patents-in-suit"). However, contrary to the allegations made by SRA in its complaint, SRA is not the assignee of the patents-in-suit, and therefore lacks standing to bring this action.[1]

## I. SUMMARY OF THE ARGUMENT

The right to sue for patent infringement is limited by statute and case law to the owner of the patent.[2] *See* 35 U.S.C. § 281 ("A patentee shall have remedy by civil action for infringement of his patent."); *Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 40 (1923) ("[T]he plaintiff in an [infringement] action … must be the person or persons in whom the legal title to the patent resided at the time of the infringement."). If a party lacks ownership rights in the patent-in-suit at the time of filing its complaint, then there is no standing, and the case should be dismissed. Under Article III of the Constitution, a plaintiff must establish standing to sue before a federal court will consider the merits of its claims. As one court aptly noted:

> In light of the proliferation of patent-infringement actions, it is not too much to ask sophisticated patent litigants to be careful when it comes to the threshold issue of standing…. District judges cannot overlook a defect in the chain of title, for the entirety of massive litigation might wind up being vacated years later, for lack of threshold standing. As carpenters say, it is wise to "measure twice and cut once."

---

[1] Defendants have filed a complaint for declaratory judgment in the Northern District of California against Daniel Egger, SRA, and Site Technologies, Inc. Civil Action No. 3:08-cv-03172-MEJ. The Northern District of California is the proper venue and jurisdiction for resolving the controversies relating to Site Technologies, Inc. and its patents (Exhibit 1).

[2] While the Federal Circuit has made an exception to this standing rule for exclusive licensees with all substantial rights to a patent, *see Enzo APA & Son, Inc. v. Geapag AG*, 134 F.3d 1090, 1093-94 (Fed. Cir. 1998), nothing in Plaintiff's complaint alleges that SRA is an exclusive licensee with such rights.

*Quantum Corp. v. Riverbed Tech., Inc.*, No. C 07-04161 WHA, 2008 WL 314490, at *3 (N.D. Cal. Feb. 4, 2008) (citations omitted).

Here, SRA's complaint should be dismissed because it has never owned the patents-in-suit. SRA presumably will argue that its ownership arises from a February 22, 2005 assignment from Daniel Egger ("Egger"). Egger, however, had no patent rights to convey to SRA in February 2005. This is because neither of the two prior assignments that purported to convey rights to Egger actually conveyed any rights to the patents-in-suit:

1. The first assignment, the "1998 Assignment," was from Site Technologies, Inc., a California corporation, to Egger. However, Site Technologies, Inc. did not own the patents at that time, and the corporation's subsequent bankruptcy filing and confirmed Plan of Reorganization would have prevented Egger from obtaining the patents from the estate.

2. The second assignment, the "2005 Assignment," was from Site/Technologies/Inc., a Delaware corporation, to Egger for $1, via an instrument executed by Egger himself. However, by this time in 2005, Site/Technologies/Inc. did not even exist and Egger did not have authority to transfer its assets (much less to himself).[3] Moreover, applicable corporate and bankruptcy law would have required additional approvals for such an assignment to Egger, none of which were obtained.[4]

Thus, neither purported assignment granted Egger title to the patents-in-suit. And since Egger did not acquire the patents-in-suit, SRA did not acquire the patents-in-suit from him and thus has no standing to bring this action.

## II. FACTS

### A. The Inventors Assigned All Their Rights To Libertech

The '352 patent issued from Application Serial No. 08/076,658, which named Daniel Egger as its sole inventor. Pursuant to an assignment dated November 9, 1993 and recorded with

---

[3] These events are summarized in the timeline attached hereto as Exhibit 2.

[4] Under Delaware General Corporation Law § 271 and otherwise, the approval of shareholders and the board of directors of Site Technologies Inc. would have been required for such a transaction. No board then existed. Moreover, during bankruptcy, the sole shareholder/parent corporation could have acted only through a Responsible Person acting pursuant to the Chapter 11 Plan of Reorganization. *See* 11 U.S.C. § 1141.

the USPTO (Exhibit 3), Egger assigned all his rights in this application, and hence the '352 patent, to Libertech, Inc., a Delaware corporation that he founded in 1992.

On May 17, 1996, a continuation-in-part application to the '352 patent was filed. This application named Egger, as well as Shawn Cannon and Ronald D. Sauers, as inventors and later issued as the '494 patent. Pursuant to an assignment recorded with the USPTO (Exhibit 4), all three co-inventors assigned all their rights in the application that later issued as the '494 patent to Libertech, Inc. on June 18, 1996. A divisional application of the '494 patent later issued as the '571 patent.

As a result of these two assignments, all the rights to the patents-in-suit resided squarely with Libertech.

### B. Libertech (a.k.a. Site/Technologies/Inc.) Never Assigned Its Rights To Egger

On August 22, 1996, Libertech, Inc. changed its name to Site/Technologies/Inc. The name change was also recorded with the USPTO. (Exhibit 5). For ease of reference, we will continue to refer to both Libertech Inc. and Site/Technologies/Inc. as "Libertech" except where necessary to show correspondence to the documents.

On July 11, 1997, Deltapoint, Inc., a California corporation, purchased all the shares of Libertech pursuant to a Stock Exchange Agreement that Deltapoint publicly disclosed in an SEC filing (Exhibit 6). The Agreement was executed by Jeffrey Ait on behalf of Deltapoint and by Ron Sauers, on Libertech's behalf as its last President before the change of control. (See Exhibit 6 at p. 22). After being acquired as a subsidiary of Deltapoint, Libertech remained the sole holder of record title to the '352 patent and the applications that would issue as the '494 and '571 patents. Other Deltapoint filings and press releases confirmed Libertech's status as a wholly-owned subsidiary. See, e.g., Exhibits 7, 8 & 9.

Thereafter, Deltapoint, Inc., the California corporation and parent of Libertech, changed its name to Site Technologies, Inc. (distinguishable from its subsidiary Libertech (a.k.a. Site/Technologies/Inc.) by the absence of slashes in its name). Since Deltapoint, Inc. and Site

Technologies, Inc. are merely two different names for the same company, we will generally refer to the company as "Deltapoint."

In September 1998, Deltapoint agreed to sell its technology pertaining to a product called "V-Search" to Egger. Deltapoint and Egger entered into a Bill of Sale, Assignment and License Agreement (Exhibit 10, pp. 1-4) pursuant to which Egger would pay $100,000 to obtain software, software copyrights, software licenses, trademarks, certain physical property, and rights to the '352 patent and certain related applications.[5] As recorded with the USPTO, this Bill of Sale was followed by an undated assignment (the "Undated Assignment," hereafter) (Exhibit 10, pp. 5-6) relating to the '352 patent (but not the then-pending continuation-in-part applications that later issued as the '494 and '571 patents). Numerous irregularities appear on the face of the Undated Assignment, among them: (i) its last sentence of text cuts off in mid-sentence followed by a blank line; (ii) no signature other than the initials of Daniel Egger, the purported assignee, appears on the same page as the document's text; and (iii) the lone signature of an attesting witness appears on a separate page from the document's text. Even apart from these and other defects, these documents did not transfer any patent rights to Egger because at this time Libertech, *not* its parent Deltapoint, held the rights to the patents-in-suit. Simply put, Deltapoint had no patent rights to convey.

After the purported assignment of the '352 patent to Egger by Deltapoint, on February 21, 1999, Deltapoint commenced Chapter 11 bankruptcy proceedings in the United States Bankruptcy Court for the Northern District of California.[6] In its February 18, 2000, Statement of Financial Affairs, Deltapoint identified Libertech as its subsidiary from "9/94–present." (Exhibit 9 at 7). On June 15, 2000, the bankruptcy court approved Deltapoint's First Amended Plan of Reorganization governing the estate's assets.

---

[5] Deltapoint's official Statement of Financial Affairs in the bankruptcy proceedings, filed on February 18, 2000, reported that Eggers had paid only $80,000 of that $100,000, however. (Exhibit 9).

[6] The bankruptcy case is *In re Site Technologies, Inc. dba Deltapoint, Inc.*; Case No. 99-50736-JRG-11 (Bankr. N.D. Cal.).

Subsequently, on December 21, 2000, Deltapoint (a.k.a. Site Technologies, Inc.), the California corporation, filed certificates with the California and Delaware Secretaries of State (Exhibits 11 & 12) stating that it merged itself and its subsidiary Libertech (a.k.a. Site/Technologies/Inc.) together, leaving Deltapoint as the surviving corporation.[7]

As a consequence of the December 2000 merger documents, all the assets of Libertech – including title to the patents-in-suit – would have become the property of the surviving entity, Deltapoint (a.k.a. Site Technologies, Inc.). *See* Cal. Corp. Code § 1107(a) ("Upon merger... the surviving corporation shall succeed, without other transfer, to all the rights and property of each of the disappearing corporations."). Also as a second consequence of the merger documents, Libertech (a.k.a. Site/Technologies/Inc.) would have ceased to exist. *See* Del. Code tit. 8, § 259(a) ("When any merger or consolidation shall have become effective under this chapter, … the separate existence of all the constituent corporations … shall cease.").

The bankruptcy proceeding came to a close with the bankruptcy court's final decree on January 6, 2004. Pursuant to ¶ 14.2 of the First Amended Plan of Reorganization, which was approved by the bankruptcy court:

> All property of the Bankruptcy Estate shall vest in the Debtor subject to the terms and conditions of the Plan. All property of the Debtor, except as otherwise provided in the Plan, shall be free and clear of any liens, encumbrances, Claims of Creditors and Interests of Equity Security Holders.

Consequently, Deltapoint's property emerged free and clear of any liens and claims.

### C. Egger's 2005 Assignment To Himself Was A Nullity And A Fraud

Egger formed Software Rights Archive, Inc. as a Delaware corporation in September 2004. Shortly before purporting to assign rights to the patents-in-suit to SRA, Egger executed a February 11, 2005 Assignment (again, the "2005 Assignment") in which he purported to be the President of the nonexistent Libertech (Site/Technologies/Inc.) and to assign Libertech's patent

---

[7] Just prior to filing the merger certificates, Jeffrey Ait, Chief Executive Officer of Deltapoint, also filed a document (Exhibit 13) with the Delaware Secretary of State purporting to revive and renew Libertech's Certificate of Incorporation, which had expired on March 1, 1999.

rights over to himself.  A copy of the document that Egger executed and then recorded with the USPTO is attached as Exhibit 14.

The 2005 Assignment, however, is a fraud and of no effect.  First, at the time of the 2005 Assignment, Libertech was defunct and/or did not exist.  (Exhibits 11 & 12).  Therefore, it could not have owned the patents in 2005.  Second, even if, at the time the 2005 Assignment was executed, Libertech did exist and did own the patents, Egger was not the President of Libertech (a.k.a. Site/Technologies/Inc.).  Egger, therefore, had no authority to assign whatever rights Libertech could have possessed.  Thus, in the 2005 Assignment, Egger not only falsely stated that he was the President of a defunct and/or non-existent company that held title to the patents, but then proceeded to transfer those alleged rights to himself.  The 2005 Assignment is no more than a fraudulent instrument designed to deceive Defendants, the USPTO, and the Court.

### D. SRA Acquired No Rights From Egger But Nonetheless Relied On The Void 2005 Assignment

After executing the purported assignment of the '352 and '494 patents to himself as an alleged officer of a defunct and/or nonexistent company, on February 22, 2005, Egger promptly assigned the rights that he purportedly acquired by virtue of the 2005 Assignment to his holding company, SRA, so that it could sue Defendants.  (Exhibit 15).

The following table summarizes the various assignments and merger documents and their apparent legal effect:

|  | Title Holder Immediately before Transaction | Listed Assignor → Listed Assignee | | Legal Effect[#] |
|---|---|---|---|---|
| 1998 Bill of Sale and Undated Assignment of '352 patent (Exhibit 10) | Libertech (a.k.a. Site/Technologies/ Inc.) | Deltapoint (a.k.a. Site Technologies, Inc.) | Egger | None<br><br>Title remains with Libertech (a.k.a. Site/Technologies/ Inc.) |
| December 2000 Merger of Deltapoint and Libertech (Exhibits 11 & 12) | Libertech (a.k.a. Site/Technologies/ Inc.) | (not applicable) | (not applicable) | By merger, title would transfer to merged entity, Deltapoint (a.k.a. Site Technologies, Inc.) |
| February 11, 2005 Assign-ment of '352 and '494 patents (Exhibit 14) | Deltapoint (a.k.a. Site Technologies, Inc.) | *defunct and/or non-existent* entity Libertech (a.k.a. Site/Technologies/ Inc.) | Egger | None |
| February 22, 2005 Assignment of '352, '494 and '571 patents (Exhibit 15) | Deltapoint (a.k.a. Site Technologies, Inc.) | Egger | SRA | None |

[#]See Argument below.

As demonstrated above, Egger never acquired the patents-in-suit and therefore had no rights to transfer to SRA. Nonetheless, Egger and SRA persist in relying on the 2005 Assignment to exploit the patents-in-suit and to attempt to wrongfully enforce them against Defendants.

For example, when the '494 patent expired for failure to pay maintenance fees on November 4, 2006, Egger, acting as President of SRA, submitted a Petition to Accept Unintentionally Delayed Payment of Maintenance Fee in an Expired Patent (Exhibit 16). In the accompanying statement declaring ownership (titled "Statement Under 37 C.F.R. 3.73(b)") (Exhibit 17), as required by USPTO regulations, Egger declared that SRA was "the assignee of the entire right, title, and interest" to the '494 patent. In this statement, SRA relied on the 2005 Assignment to establish ownership without disclosing that the assigning entity was defunct

and/or had ceased to exist and did not own the patents, and that Egger had no authority to execute it. Even more, SRA further misrepresented the chain of title by omitting the slashes in the name of Site/Technologies/Inc. (i.e., Libertech) so that it appeared to be the same entity as Site Technologies, Inc. (i.e., Deltapoint). SRA would not have been able to make the required showing of ownership without these misrepresentations and falsehoods.

On November 21, 2007, SRA filed this action against Defendants. In its complaint, SRA averred that it was "the assignee of all right, title, and interest in and to" the '352 patent, and "the assignee of the '494 patent."[8] As further explained below, SRA has no standing to bring this action, and consequently the Court lacks subject matter jurisdiction.

### III.   ARGUMENT

#### A.   Applicable Law

It is a basic principle of patent law that a party who lacks legal ownership of or substantially all the rights to a patent is without standing to sue for infringement of that patent. *See Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001) ("If a party lacks title to a patent, that party 'has no standing to bring an infringement action' under that patent.") (citing *FilmTec Corp. v. Allied-Signal Inc*., 939 F.2d 1568, 1571 (Fed. Cir. 1991)). By statute, the assignment of a patent from one party to another must be done in writing. 35 U.S.C. § 261 ("Application for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing."); *see also Enzo APA & Son, Inc.*, 134 F.3d at 1093 (holding that a virtual assignment, just like actual assignments, must be in writing).

Without standing to bring an action for infringement, there is no subject matter jurisdiction over the claim, requiring the action to be dismissed. *Intellectual Prop. Dev., Inc. v. TCI Cablevision of CA, Inc*., 248 F.3d 1333, 1345 (Fed. Cir. 2001), *cert. denied*, 534 U.S. 895 (2001). Once a defendant asserts lack of subject matter jurisdiction in a motion to dismiss, the

---

[8]   See ¶¶ 10, 15 and 20 of Plaintiff's Complaint. SRA did not aver that it had any rights to the '571 patent.

plaintiff bears the burden of establishing that the court has the requisite subject matter jurisdiction over the dispute. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Because federal courts have limited jurisdiction, it is presumed that a suit lies outside these limits, and accordingly the burden of establishing federal jurisdiction rests on the party seeking the federal forum. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

### B. SRA And Egger Never Acquired The Patents-In-Suit

It is undisputed that SRA's alleged rights are entirely derivative of Egger's. It is also undisputed that, as of June 1996, Libertech (a.k.a. Site/Technologies/Inc.) was the sole owner of the patents-in-suit based on assignments from the named inventors. Thus, the only issue is what rights, if any, Egger obtained from Libertech (a.k.a. Site/Technologies/Inc.) based on (1) the 1998 Assignment and (2) the 2005 Assignment.

#### 1. The 1998 Assignment Did Not Transfer Title

Plaintiff cannot establish standing based on the 1998 Assignment because the patents were not owned by the transferor, Site Technologies, Inc. (referred to as Deltapoint herein). Instead, the patents were owned by Libertech, a subsidiary of Deltapoint who was not even a party to the 1998 Assignment. (See Exhibit 10). As a result, the 1998 Assignment could not have transferred title to Egger.

Under the Patent Act, patent assignments must be in writing to be effective. 35 U.S.C. § 261. Although Deltapoint owned all the shares of Libertech in 1998, there is no written assignment on record at the U.S. Patent Office that transfers title in the patents from Libertech to Deltapoint. In the absence of such a written conveyance to Deltapoint prior to the 1998 Assignment, Libertech, and not its parent Deltapoint, remained the sole owner of the patents-in-suit.[9]

---

[9] Defendants are unaware of any assignment from Libertech to Deltapoint and have asked Plaintiff's counsel to provide documents establishing chain of title. Rather than do so, Plaintiff's counsel has pointed to statements in two of Deltapoint's SEC filings and alluded to other unspecified documents. In the first SEC filing, Deltapoint suggested that its stock purchase agreement (Exhibit 6) included "all outstanding assets of" Libertech. But, this

Moreover, Libertech's mere status as a subsidiary of Deltapoint also did not vest Deltapoint with ownership of the patents. To the contrary, the distinctiveness of each corporate entity must be respected. As the Supreme Court explained in *Dole Food Co. v. Patrickson,* "[a] corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary." 538 U.S. 468, 475 (2003).

Likewise, the Federal Circuit has held that the owner of a patentee does not itself have standing to sue for patent infringement. *Lans*, 252 F.3d at 1328. The plaintiff in *Lans* was the sole owner of a non-operational holding company which held legal title to the asserted patents. *Id.* at 1324-25. The Federal Circuit affirmed that there was no jurisdiction because the plaintiff lacked standing. *Id.* at 1328; *see also LDM Techs., Inc. v. Rowen-Waters Group, LLC*, No. 02-73520, 2005 WL 2449300, at *2 (E.D. Mich. Sept. 28, 2005) ("[T]here is no authority which confers standing on a parent company to file a patent suit on behalf of its subsidiary").

Because the sole owner of a patentee has no standing to sue for patent infringement, such a parent also cannot by assignment grant a third party sufficient title to do so. Thus, Deltapoint (a.k.a. Site Technologies, Inc.), despite being Libertech's (a.k.a. Site/Technologies/Inc.'s) parent by virtue of having acquired all of Libertech's shares (see Exhibit 6), could not, and did not, transfer any rights to the patents-in-suit to Egger by way of the 1998 Assignment.

In fact, SRA and Egger conceded this point when Egger concocted the fraudulent 2005 Assignment, in which he declared that, as of that date, Site/Technologies/Inc. (i.e., Libertech) was "the owner of the patent(s) identified on Schedule A" namely the '352 and '494 patents and

---

statement did not even mention the patents-in-suit, and moreover mischaracterized the stock purchase agreement (Exhibit 6) as an asset purchase. In the second SEC filing, Deltapoint stated that, on September 30, 1998, it had "consummated the sale of its V-Search technology and related patents" for $100,000. This document, too, fails to establish a valid transfer of the patents from Libertech to Deltapoint. Deltapoint subsequently retreated from this representation, reporting to the bankruptcy court that it had received only $80,000 from Egger. (Exhibit 9). Regardless of the factual discrepancies in these documents, neither is a written conveyance establishing an unbroken chain of title from Libertech to Egger. Plaintiff cannot rely on inaccurate SEC filings to bridge a gap in the chain of title. (As discussed below, the absence of such a link motivated Egger to create such a document in February 2005, albeit a fraudulent one.)

then purported to transfer "the entire right, title, and interest in and to the Patents" to himself. (Exhibit 14). In other words, despite the alleged 1998 sale of the "V-Search" technology to Egger by the parent Deltapoint, its subsidiary Libertech (a.k.a. Site/Technologies/Inc.) retained all rights to the patents at that time.

### 2. The 2005 Assignment Transferred No Rights

Given that the 1998 Assignment did not convey the patents-in-suit to Egger, SRA must rely on the 2005 Assignment (Exhibit 14). Egger executed this document himself on behalf of Libertech as its supposed President and purported to assign the '352 and '494 patents (but not the '571 patent) to himself as an individual. However, the 2005 Assignment failed to transfer any rights to Egger for the simple reasons that, by February 11, 2005, Libertech was defunct and/or did not exist, and even if it did, it no longer owned the patents and Egger was not its President.

Exhibits 11 and 12 to this motion indicate that this Delaware corporation (Libertech, a.k.a. Site/Technologies/Inc.) merged into a California corporation (Deltapoint, a.k.a. Site Technologies, Inc.) on December 21, 2000. By operation of Delaware law, Del. Code tit. 8, § 259(a), Libertech, the owner of the patents before the merger, would have then ceased to exist. A purported assignment by a non-existent entity that cannot own any property is obviously null and void. Furthermore, all of Libertech's property would have been subsumed by the entity emerging from the merger, Deltapoint, a California corporation. *See* Cal. Corp. Code § 1107(a) and at page 5 above. Thus, after the merger on December 21, 2000, Deltapoint (a.k.a. Site Technologies, Inc.) would have owned the patents-in-suit.

On February 11, 2005, Egger also could not have been President of the defunct and/or non-existent Libertech. Egger had previously transferred all his shares in Libertech to Deltapoint pursuant to the 1997 Stock Exchange Agreement (*see* in particular § I.1.c of Exhibit 6 at 1-2). In the merger documents (Exhibits 11 & 12), Deltapoint declared that, immediately prior to the merger, Deltapoint owned all shares in Libertech. Nothing suggests that Egger was ever made President of Libertech after Deltapoint acquired ownership of all stock in Libertech in 1997. In

any event, no President of Libertech could have so transferred the patents to himself without the approvals required by law, i.e., consent of the board of directors (then no longer existing) and pertinent approvals under bankruptcy law.[10]

Indeed, the 2005 Assignment appears to be nothing more than a fiction concocted by Egger to bridge the missing link in the chain of title.[11] Egger appears to have been fully aware that the purported 1998 Assignment was ineffective and resolved to take title instead by pretending to be President of the defunct and/or non-existent Libertech. But a party cannot take by assignment more rights than the assignor had. *TM Patents, L.P. v. Int'l Bus. Machs. Corp.*, 121 F. Supp. 2d 349, 365 (S.D.N.Y. 2000) ("[A]n assignee [cannot obtain] any title better than the assignor had."). Hence, SRA, like Egger, did not obtain any rights to the patents-in-suit by way of the 2005 Assignment. It was nothing more than a sham transaction perpetrated upon the USPTO, and ultimately Defendants and this Court.

### 3. No Document Grants SRA Title

Because neither the 1998 Assignment nor the duplicitous 2005 Assignment conveyed the patents-in-suit to Egger, SRA did not acquire any rights to the patents from Egger and consequently has no standing to bring this action. Absent subject matter jurisdiction, this case must be dismissed. *Intellectual Prop. Dev., Inc.*, 248 F.3d at 1345.

## IV. CONCLUSION

For the reasons stated, this Court lacks subject matter jurisdiction over this case. The case should be dismissed.

---

[10] See Footnote 4.

[11] Plaintiff's counsel has not provided any explanation for the 2005 Assignment.

Dated: July 16, 2008

Respectfully submitted,

By: /s/Thomas B. Walsh, IV
Juanita R. Brooks – Lead Attorney
(CA Bar No. 75934)
E-mail: brooks@fr.com
Fish & Richardson P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Thomas B. Walsh, IV
Texas Bar No. 00785173
Fish & Richardson P.C.
5000 Bank One Center
1717 Main Street
Dallas, TX 75201
Telephone: (214) 747-5070
Facsimile: (214) 747-2091
E-mail: walsh@fr.com

Harry L. Gillam, Jr.
Texas Bar No. 07921800
E-mail: gil@gillamsmithlaw.com
Melissa R. Smith
Texas Bar No. 24001351
E-mail: melissa@gillamsmithlaw.com
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Attorneys for Defendants GOOGLE INC. and AOL LLC

By: /s/Richard S. J. Hung (by permission)
Michael A. Jacobs (CA Bar No. 111664)
Richard S. J. Hung (CA Bar No. 197425)
MORRISON & FOERSTER
425 Market Street
San Francisco, CA 94105
Telephone: 415-268-7000
Facsimile: 415-268-7522
Email: mjacobs@mofo.com
Email: rhung@mofo.com

Michael E. Jones
Texas Bar No. 10929400
Potter Minton, A Professional Corporation
110 North College, Suite 500
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846
Email: mikejones@potterminton.com

Attorneys for Defendant YAHOO! INC.

By: /s/ Claude M. Stern (by permission)
Claude M. Stern (CA Bar No. 96737)
Jennifer A. Kash (CA Bar No. 203679)
QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100
Email: claudestern@quinnemanuel.com
Email: jenniferkash@quinnemanuel.com

Otis Carroll
Tex. Bar No. 03895700
Collin Maloney
Tex. Bar No. 00794219
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
Tyler, Texas 75703
Tel: (903) 561-1600
Fax: (903) 581-1071
Email: Fedserv@icklaw.com

Attorneys for Defendants IAC SEARCH & MEDIA, INC. and LYCOS, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 16, 2008 on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/Thomas B. Walsh, IV<br>Thomas B. Walsh, IV