## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

**SOFTWARE RIGHTS ARCHIVE, LLC**

**v.**

**Civil Case No. 2:07-cv-511 (CE)**

**GOOGLE INC., YAHOO! INC., IAC
SEARCH & MEDIA, INC., AOL, LLC,
AND LYCOS, INC.**

## JOINT MOTION OF THE PARTIES TO NOTIFY THE COURT OF (1) AGREEMENTS REGARDING PROTECTIVE ORDER AND (2) ONE REMAINING DISPUTE REGARDING PROTECTIVE ORDER

Come now Plaintiff Software Rights Archive, LLC and Defendants Google, Inc., Yahoo! Inc., IAC Search & Media, Inc., AOL, LLC, and Lycos, Inc. and file this Joint Motion of the Parties to Notify the Court of (1) Agreements Regarding Protective Order and (2) One Remaining Dispute Regarding Protective Order.

1.      The deadline to submit an agreed protective order in this case (or competing versions of same if agreement cannot be reached) is November 4, 2008.

2.      The parties have reached agreement on the terms of a protective order with two exceptions:

(A)      As reflected in paragraph 9 of the attached Protective Order, the parties continue to negotiate the provisions of a supplemental protective order governing any source code production.  The parties believe that Plaintiff's recent P.R. 3-1 and 3-2 disclosures, served on October 31, 2008, will allow the parties to better evaluate each other's positions on this subject.  The parties have agreed to file, by December 1, 2008:  (a) a supplemental protective order governing any source code production; or (b) competing versions of supplemental

1

Dockets.Justia.com

protective orders governing any source code production, if the parties ultimately cannot reach

agreement on this issue. Accordingly, the parties do not ask the Court to rule on any disputes

regarding source code production at this time.

(B)    The parties have not reached agreement on whether in-house counsel

should be allowed access to Attorney's Eyes Only material(s) produced by the other side.

(i)    Plaintiff has proposed, as paragraph 8(g) of the Protective Order:

One (1) in-house counsel for plaintiff and up to two (2) in-house counsel for each defendant with responsibility for managing this litigation who either has responsibility for making decisions dealing directly with this litigation or who is assisting outside counsel in this litigation, and who has agreed in a writing furnished to opposing counsel to subject himself/herself to the jurisdiction of this Court and to abide by the terms of this Protective Order; provided, however, that defendants' employees under this sub-paragraph shall not have access to any co-defendants' CONFIDENTIAL ATTORNEYS' EYES ONLY material.

(ii)    Defendants have proposed that paragraph 8(g) is unnecessary, as

in-house counsel should not be allowed access to the other side's CONFIDENTIAL

ATTORNEYS' EYES ONLY material.

If the Court is inclined to allow in-house counsel access to CONFIDENTIAL

ATTORNEYS' EYES ONLY material of the other side, however, Defendants propose the

following language to impose reasonable restrictions on such in-house counsel:

"One (1) in-house counsel for plaintiff and up to two (2) in-house counsel for each defendant with responsibility for managing this litigation who either has responsibility for making decisions dealing directly with the litigation in this action or who is assisting outside counsel in preparation for proceedings in this action, with prior written consent on a document-by-document basis, and who have signed the form attached hereto as Attachment A, except that defendants' in-house counsel under this sub-paragraph shall not have access to any co-defendants' CONFIDENTIAL ATTORNEYS' EYES ONLY material. In-house counsel under this sub-paragraph may not provide legal services for another party adverse to the party that produced the CONFIDENTIAL ATTORNEYS' EYES ONLY material in the subject areas of the products or businesses at issue in this litigation for one year after the final termination of this litigation, except that defendant's in-house counsel may provide legal services to any related parent, subsidiary, or affiliated corporate entities. In-house counsel's access to another

party's CONFIDENTIAL ATTORNEYS' EYES ONLY material shall be made available at a mutually-agreeable location."

3.      So that the Court can evaluate these two competing positions (or fashion its own language if it so desires), the parties each offer the following arguments to the Court:

      (A)    **Plaintiff's Position:**

In-house counsel must be able to review and discuss documents and other discovery materials in order to make decisions about key issues such as further discovery, settlement positions, and trial strategy.  Plaintiff's in-house counsel is Mr. Russ Barron, a retired partner from Foley & Lardner and former co-chair of that firm's IP Litigation Practice.  He has over thirty years' experience in patent litigation.

Defendants cannot justify additional limitations on in-house counsel's access to discovery materials; such limitations are unnecessary and harmful to Plaintiff.

<u>First</u>, Plaintiff relies on Mr. Barron because of his judgment and experience.  Depriving Mr. Barron of information deprives Plaintiff of Mr. Barron's informed advice.

<u>Second</u>, Mr. Barron is well aware of his ethical obligations and will adhere to them in this case, just as he has done in the past and would do in any other case.

Third, there is no basis for differentiating Mr. Barron or other in-house counsel from Plaintiff's outside counsel with respect to access to Attorneys' Eyes Only information. Case law strongly supports Plaintiff's position. The seminal case and leading authority on the issue is *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984). In vacating the decision below that had denied in-house counsel access to confidential information, the court noted:

> Like retained counsel, however, in-house counsel are officers of the court, are bound by the same Code of Professional Responsibility, and are subject to the same sanctions. In-house counsel provide the same services and are subject to the same types of pressures as retained counsel. The problem and importance of avoiding inadvertent disclosure is the same for both.

*U.S. Steel*, 730 F.2d at 1468. If Plaintiff's outside counsel see "AEO" protected materials of one or more Defendants in this case, that will not prevent outside counsel from being adverse to one of the Defendants in subsequent litigation, notwithstanding exposure to that Defendant's protected materials. Defendants' argument is based on the improper assumption that in-house counsel should be treated differently.

Fourth, under *U.S. Steel* and the many cases that follow it, the only basis for denying in-house counsel access to information is where "the *specific facts* indicate a *probability* that confidentiality, under any form of protective order, would be *seriously* at risk." *U.S. Steel*, 730 F.2d at 1469 (emphasis added). The Federal Circuit recognized that, when in-house counsel is involved in "competitive decisionmaking," such a risk *might* exist. *Id.* at 1468. Plaintiff is not in the search engine business today and Mr. Barron is not involved in competitive decisionmaking. Although Defendants may argue that Mr. Barron is affiliated with an entity that seeks out potential patent suits, that is not competitive decisionmaking, nor is there any showing that Defendants' confidentiality is "seriously at risk." Thus there is no basis for Defendants' proposed exclusion of in-house counsel from access to information. Numerous cases have followed *U.S. Steel*. *Matsushita Electric Industrial Co. v. U.S.*, 929 F.2d 1577, 1579-80 (Fed. Cir. 1991); *Photoprotective Technologies, Inc.*

*v. Insight Equity A.P. X,* 2007 WL 2461819 (W.D. Tex. Aug. 27, 2007) (quoting *U.S. Steel* and denying motion for protective order due to Defendants' failure to show in-house counsel's "advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor"); *see also In re Papst Licensing Patent Litigation,* 2000 WL 1036184 (E.D.La. July 25, 2000) (overruling efforts to deny in-house counsel access to information due to failure to show any greater threat of disclosure by in-house counsel than by outside counsel); *Amgen, Inc. v. Elanex Pharmaceuticals, Inc.,* 160 F.R.D. 134, 139 (W.D.Wash. 1994) (allowing access to information by in-house counsel despite "a sizeable cadre of outside lawyers").[1] Although Defendants may raise a number of improbable future scenarios, Defendants have not shown any current threat to their confidential information. That alone should foreclose Defendants' challenge to in-house counsel's access to information in this case.

---

[1]   Defendants' reliance on the Court's Memorandum Opinion and Order in *ST Sales Tech Holdings, LLC v. Daimler Chrysler Co.*, No. 6:07-cv-00346-LED-JDL (E. D. Texas, March 14, 2008) (Docket No. 160) is seriously misplaced. As Judge Love noted, the plaintiff's principal Eric Spangenberg was frequently adverse to the Defendants, and in similar cases:

> Spangenberg's many other patent holding entities have previously sued these same Defendants a number of times in just over three years. The most recent lawsuits, including this one, involve similar patents and infringing conduct, specifically the operation of "build your own" tools on Defendants' websites and web-based methods for interacting with Defendants' auto dealerships . . . . Spangenberg's entities continue to acquire and attempt to enforce other similar patents against these same Defendants, including the '305 patent asserted herein.

Opinion at *1-2. Further, Spangenberg's/ST Sales Tech's in-house counsel David Pridham, whose requested access to Defendants' information was the basis for the dispute, was heavily involved in the ongoing effort: "[I]t is undisputed that Pridham has worked and continues to work extensively with Spangenberg entities in their business of acquiring, litigating, and licensing patents." Opinion at *2-3. Judge Love also noted that Pridham provided many services to Spangenberg's entities, including serving in a business capacity. Opinion at *6-7. Ultimately, given the continuous, ongoing litigation against Defendants, and Pridham's extensive involvement in the entities, it is hardly surprising that the Court found that Pridham was "a competitive decisionmaker under the *U.S. Steel Corp.* definition of the term." Opinion at *10. Even a cursory reading of the *ST Sales Tech* opinion shows that case to be significantly different from this case, where Defendants' opposition is based on speculation, not fact.

Fifth, imposing a bar on Plaintiff's in-house counsel from litigation against Defendants until this pending lawsuit is concluded, let alone a year afterwards, such as proposed by Defendants with respect to Mr. Barron, would mean that Mr. Barron could not represent or advise anyone adverse to Defendants for many, many years, until all appeals in this case are concluded, perhaps as late as the year 2014. Such a limitation is unfair to both Mr. Barron and potential future clients.

Sixth, just like any other attorney in this case, Mr. Barron will be subject to the jurisdiction of this Court; he will obey the Protective Order entered by this Court. If he does not, this Court can -- and undoubtedly will -- take appropriate remedial action. The time for such remedial action is if and when misconduct occurs. Denial of access now is punitive, not remedial, and Defendants cannot justify it.

(B)     **Defendants' Position:**

Allowing in-house counsel access to CONFIDENTIAL ATTORNEYS' EYES ONLY ("AEO") information is neither necessary nor reasonable. If, however, the Court is inclined to grant access, then Defendants respectfully request that reasonable restrictions be put in place.

***No need for access***:     Under the Protective Order, the AEO designation is reserved for the parties' most commercially-sensitive, competitive information. For Defendants, the AEO designation covers their most important trade secrets, such as the specifics of how their search engine technologies work. Plaintiff has offered no reasonable explanation for why its in-house counsel – undisputedly a non-technical person – requires access to this critically sensitive information to "strategize" about the case. The agreed to Protective Order already allows Plaintiff's outside counsel to review Defendants' AEO information and render advice to Plaintiff and its in-house counsel. (*See* ¶ 38). Additionally, because Plaintiff is a patent-holding company

that does not practice the patents-in-suit, Plaintiff will have little, if any, material of its own that justifies the AEO designation. Plaintiff's request for in-house access to AEO materials therefore is a one-sided request.

Plaintiff wants to allow access to AEO information by Russ Baron, Plaintiff's in-house counsel and a consultant or advisor for Altitude Capital Partners. (http://www.ceridiaweb.com/dev/wipla/files/events/2008-09-16%20Presentation%20Notes.pdf) Plaintiff is believed to be funded by or associated with Altitude Capital Partners (www.altitudecp.com), which apparently helps non-practicing patent-holding companies like Plaintiff bring patent infringement lawsuits against companies like Defendants. To be clear, Defendants are not challenging the ethics or integrity of Mr. Barron. "Under the relevant analysis, the focus of the inquiry is not the attorney's good faith, but the risk for *inadvertent* disclosure," *ST Sale Tech Holdings, LLC, v. Daimler Chrysler Co., LLC*, No. 6:07-cv-00346-LED-JDL at *4 (E. D. Texas March 14, 2008) (Docket No. 160) (emphasis in original). In addition, the *ST Sale Tech* case makes clear that whether Mr. Barron is a "competitive decisionmaker" is not the only inquiry to be considered by the Court. "Other factors to be considered in the balancing include: (1) whether the person receiving the confidential information is involved in competitive decision making or scientific research relating to the subject matter of the patent, (2) the level of risk of inadvertent disclosure of proprietary information, (3) the hardship imposed by the restriction, (4) the timing of the remedy, and (5) the scope of the remedy." *Id.* Moreover, the "ultimate goal of the balancing is to determine whether counsel's access to the confidential information creates 'an unacceptable opportunity for inadvertent disclosure.'" *Id. (citing U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1468 (Fed Cir. 1984)).

Here, Mr. Barron's apparent role as an advisor to Altitude Capital only increases the risk of inadvertent or accidental disclosure. *AndrxPharm., LLC v. GlaxoSmithKline, PLC,* 236 F.R.D. 583, 585-86 (S.D. Fla. 2006) ("Even if the competitor's counsel acted in the best of faith and in accordance with the highest ethical standards, the question remains whether access to the moving party's confidential information would create an unacceptable opportunity for inadvertent disclosure."). Accordingly, just as in *ST Sales Tech*, where the Court reasoned that the risk of inadvertent disclosure was too great, despite assurances that counsel would abide by the protective order (Op. 4, 11), the risk here is too great, despite Mr. Barron's and Plaintiff's assurances, due to Mr. Barron's role with Altitude Capital.

Finally, Plaintiff has offered no evidence that in-house counsel will adequately protect the sensitivity of Defendants' information. In light of the extremely sensitive nature of Defendants' AEO information, access should occur only at adequately secure locations (e.g., badge access, secure network access).

*Limited restrictions are necessary*: In an attempt to meet and confer on this issue, Defendants previously proposed reasonable restrictions on in-house counsel's access to AEO materials to prevent their inadvertent mishandling or misuse:

> **Prior Consent:** Defendants proposed that in-house counsel access occur only with prior written consent of the producing party. This prior consent requirement permits in-house counsel to access AEO materials by agreement when it is truly necessary (e.g., to understand another party's argument) or where it might facilitate the resolution of this case (e.g., during mediation or settlement discussions). Other non-practicing entities have agreed to exactly this same protective order requirement in litigation against some of the same defendants.

*See, e.g., Performance Pricing v. Google Inc. et al.* (E.D. Tex., No. 07-432, Docket No. 123); *Aloft LLC v. Yahoo Inc. et al.* (E.D. Tex., No. 08-050, Docket No. 97).

**Mutually-Agreeable Location**:  Defendants proposed that in-house counsel access occur only at mutually-agreeable locations.  Such provisions are routinely adopted in connection with outside counsel source code access.  For the producing party, this requirement provides the assurance that in-house counsel access will occur only at previously-agreed upon and secure locations.  As noted above, in light of the extremely sensitive nature of Defendants' AEO information, any access should occur only at locations with adequate protections.  For the receiving party, this requirement allows it to participate in identifying the access location, and thus avoid limiting in-house counsel's access to inconvenient locations.

**One-Year Limitation on Advising Adverse Parties:**  Finally, Defendants proposed that in-house counsel who have access to an opposing party's AEO material not be able to advise other parties adversely to the producing party on related subjects for one year after this litigation ends.  This is particularly important here because Plaintiff is a patent holding company that does not practice the patents-in-suit, and Plaintiff apparently is funded by or associated with Altitude Capital (www.altitudecp.com), for whom Plaintiff's counsel is an advisor or consultant (http://www.ceridiaweb.com/dev/wipla/files/events/2008-09-16%20Presentation%20Notes.pdf).  The institution of this one year litigation bar would limit the risk that Plaintiff's in-house counsel may inadvertently or

even unconsciously use Defendants' most commercially-sensitive, competitive information in a future lawsuit against one of them in the future. In essence, this one year litigation bar is analogous to a prosecution bar, which is standard in protective orders.

Plaintiff has rejected all of these suggested limitations. While Defendants prefer that in-house counsel not be permitted access an opposing parties' AEO materials, if the Court is inclined to permit in-house counsel access to such materials, Defendants respectfully request that access occur on the terms described above.

4. The parties are, of course, available for an oral or telephonic hearing should the Court feel that it would be helpful.

WHEREFORE, the parties jointly and respectfully request that the attached Protective Order be adopted by this Court in its entirety, except that:

(1) Plaintiff respectfully submits that its proposal for paragraph 8(g) be adopted by the Court and that Defendants' proposal for paragraph 8(g) not be adopted by the Court; and

(2) Defendants respectfully submit that in-house counsel should not be allowed access to the other side's CONFIDENTIAL ATTORNEYS' EYES ONLY material. If the Court is inclined to allow in-house counsel access to CONFIDENTIAL ATTORNEYS' EYES ONLY material of the other side, Defendants respectfully request that the Court adopt their proposed language for paragraph 8(g) to impose reasonable restrictions on such in-house counsel.

Dated:  November 4, 2008

Respectfully submitted,


By:  /s/ Lee L. Kaplan (by permission)
Lee L. Kaplan
LEAD ATTORNEY
State Bar No. 11094400
**SMYSER KAPLAN & VESELKA, L.L.P.**
700 Louisiana, Suite 2300
Houston, Texas 77002
(713) 221-2323
(713) 221-2320 (fax)
lkaplan@skv.com

Victor G. Hardy
State Bar No. 00790821
(Requesting Admission *Pro Hac Vice*)
Andrew G. DiNovo
State Bar No. 00790594
Adam G. Price
State Bar No. 24027750
Jay D. Ellwanger
State Bar No. 24036522
**DINOVO PRICE ELLWANGER LLP**
P.O. Box 201690
Austin, Texas 78720
(512) 681-4060
(512) 628-3410 (fax)
vhardy@dpelaw.com

*Of counsel:*

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
**CAPSHAW DERIEUX**
1127 Judson Road, Suite 220
P.O. Box 3999
Longview, TX 75606-3999
(903) 236-9800
(903) 236-8787 (fax)
ccapshaw@capshawlaw.com

*Of counsel (cont.):*

Robert M. Parker
State Bar No. 15498000
Robert C. Bunt
State Bar No. 00787165
Charles Ainsworth
State Bar No. 0078352
**PARKER, BUNT & AINSWORTH, P.C.**
100 East Ferguson, Suite 1114
Tyler, Texas 75702
(903) 531-3535
(903) 533-9687 (fax)

ATTORNEYS FOR PLAINTIFF
SOFTWARE RIGHTS ARCHIVE,
L.L.C.

By: /s/ Thomas B. Walsh, IV

Juanita R. Brooks – Lead Attorney
(CA Bar No. 75934)
E-mail: brooks@fr.com
Jason W. Wolff
(CA Bar No. 215819)
E-mail: wolff@fr.com
Fish & Richardson P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Thomas B. Walsh, IV
Texas Bar No. 00785173
Fish & Richardson P.C.
5000 Bank One Center
1717 Main Street
Dallas, TX 75201
Telephone: (214) 747-5070
Facsimile: (214) 747-2091
E-mail: walsh@fr.com

Harry L. Gillam, Jr.
Texas Bar No. 07921800
E-mail: gil@gillamsmithlaw.com
Melissa R. Smith
Texas Bar No. 24001351
E-mail: melissa@gillamsmithlaw.com
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Attorneys for Defendants GOOGLE INC. and
AOL LLC

By: <u>/s/ Richard S.J. Hung (by permission)</u>
Michael A. Jacobs (CA Bar No. 111664)
Richard S. J. Hung (CA Bar No. 197425)
MORRISON & FOERSTER
425 Market Street
San Francisco, CA 94105
Telephone: 415-268-7000
Facsimile: 415-268-7522
Email: mjacobs@mofo.com
Email: rhung@mofo.com

Michael E. Jones
Texas Bar No. 10929400
Potter Minton, A Professional Corporation
110 North College, Suite 500
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846
Email: mikejones@potterminton.com

Attorneys for Defendant YAHOO! INC.

By: /s/ Jennifer A. Kash (by permission)
Claude M. Stern (CA Bar No. 96737)
Jennifer A. Kash (CA Bar No. 203679)
QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100
Email: claudestern@quinnemanuel.com
Email:jenniferkash@quinnemanuel.com

Otis Carroll
Tex. Bar No. 03895700
Collin Maloney
Tex. Bar No. 00794219
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
Tyler, Texas 75703
Tel: (903) 561-1600
Fax: (903) 581-1071
Email: Fedserv@icklaw.com


Attorneys for Defendants IAC SEARCH &
MEDIA, INC. and LYCOS, INC.


## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 4th day of November, 2008, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ Thomas B. Walsh, IV
Thomas B. Walsh, IV

10882467.DOC

15