IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SOFTWARE RIGHTS ARCHIVE, LLC | § § | |
| v. | § § | CIVIL NO. 2:07-cv-511 (TJW-CE) |
| GOOGLE, INC., et al. | § | |

**PLAINTIFF'S OPPOSED MOTION FOR AN EXTENSION
TO MAY 8, 2009 TO RESPOND TO DEFENDANTS'
MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

Plaintiff Software Rights Archive, LLC ("SRA") seeks an extension until May 8, 2009 to respond to Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a). Defendants have agreed to, and the Court has granted, a 22-day extension, to March 31. SRA requires at least until May 8, however, for two reasons: First, Defendants' motion raises numerous fact issues and makes many factual claims that SRA is entitled to explore and test through discovery. Even assuming that Defendants provide timely discovery responses without meritless objections, SRA will not obtain any discovery until April. Second, SRA's lead counsel is intensely engaged in pretrial preparation in the case of *Quantum World v. Lenovo*, Civil Action No. 2:07-cv-24-CE, which is currently pending in this Court and is set for trial on March 23. SRA's lead counsel will require until May 8 to secure discovery and respond to Defendants' dispositive briefing. Therefore, SRA respectfully requests this Court to extend the due date for its response to Defendants' motion to May 8.

I. **INTRODUCTION**

SRA filed this case on November 21, 2007. Defendants requested extensions of time to file their answers, which SRA agreed to, and Defendants filed their answers on January 31, 2008. Six months later, on July 16, 2008, Defendants filed a motion to dismiss for lack of standing. Extensions of time again were agreed to on both sides, and after Plaintiff filed its response,

Defendants sought discovery. With SRA's cooperation, Defendants took three depositions in South Carolina and North Carolina and sought and received thousands of documents which they believed would assist them in challenging standing. The parties engaged in multiple rounds of briefing, and the standing issue was submitted to this Court for resolution in mid-December 2008.[1] In the meantime, Defendants also requested, and SRA agreed to, an extension of time for Defendants to serve their invalidity contentions. Defendants served those invalidity contentions on January 23, 2009.

Now, fifteen months after this case was filed, and over six months after filing their motion to dismiss, Defendants have filed another defensive motion, this time a motion to transfer pursuant to 28 U.S.C. § 1404(a). SRA requested Defendants' agreement to a 60-day extension to respond to the motion to transfer, for two reasons. First, SRA is entitled to discovery so that it can test and respond to the factual contentions made by Defendants in their motion. The determination of whether a transfer is appropriate turns on two issues: (1) whether the Northern District of California would be "clearly more convenient" than the Eastern District of Texas, and (2) whether the case could have been brought in the Northern District of California. Both these elements involve numerous factual issues giving rise to the need for discovery. As to the first element, for example, Defendants have claimed that they would be inconvenienced by having to litigate in Texas rather than California, and SRA is entitled, in disputing this contention, to obtain discovery from Defendants regarding their and their witnesses' connections with Texas

---

[1] In July 2008, Defendants also filed a mirror-action declaratory judgment suit in the Northern District of California against SRA, Egger, and Site Technologies, Inc., based on the same standing arguments they raised in the first-filed Texas Action. Further, not satisfied with duplicative litigation, Defendants opened a third front in November 2008; they formed an alliance with a purported creditor in a closed bankruptcy and sought to reopen the long-closed bankruptcy of Site Technologies, Inc., which had sold the patents to Daniel Egger. Defendants again raised the issue of who owns the patents-in-suit, arguing, as they do in their standing challenge and in their Northern District of California declaratory judgment action, that the patents-in-suit belong to the bankruptcy estate of Site Technologies, Inc. The bankruptcy court in the Northern District of California reopened the proceedings for a status conference and then continued them until April 2009 pending a ruling by this Court regarding standing.

and California. As to the second element, for example, SRA disputes whether jurisdiction over Lycos would be proper in California, and SRA is entitled to obtain information from Defendants regarding Lycos's contacts with California. Discovery is being drafted but will not be served until later this week at the earliest. Thus, even assuming that Defendants comply with the discovery requests without frivolous objections, SRA will receive its requested evidence no earlier than April.

Second, SRA's counsel is fully engaged in pretrial preparation in the case of *Quantum World v. Lenovo*, Civil Action No. 2:07-cv-24-CE, currently pending in this Court for trial on March 23. Recent and ongoing pretrial preparation has included designation of deposition testimony, objections to same and counter-designations, designation of exhibits and objections to same, work on the joint pretrial order, attendance at a lengthy conference with opposing counsel regarding potential agreements on motions in limine, attendance at the Court's February 24 pretrial conference, jury selection on March 3, and presentation of two expert witnesses for deposition later this week, as well as upcoming preparation of direct examination, cross-examination, and demonstrative exhibits. Defendants' counsel undoubtedly are aware of the difficulties in securing discovery and responding to dispositive briefing in one case while engaging in intense pretrial preparation and trial in another case.

Nevertheless, despite SRA's cooperation in agreeing to extensions requested by Defendants, despite SRA's good reasons for seeking additional time to respond, despite the fact that Defendants took well over a year to file this motion—a motion that could have been filed as early as November 2007—and despite Defendants' failure to identify in correspondence with SRA a single respect in which a 60-day extension would prejudice them (*see* Ex. 1), Defendants have refused to agree to SRA's requested 60-day extension to respond to their motion.

Defendants only agreed to a 22-day extension, to March 31—an extension so limited as to be of no practical use, since it would require SRA to respond to the motion before Defendants would be required to respond to discovery, and since it would force SRA to respond within two days of the *Quantum World* trial. Hence, SRA is forced to file this motion.

## II. ARGUMENT & AUTHORITIES

This Court should grant SRA an extension to May 8 to respond to Defendants' motion to transfer. Under Federal Rule of Civil Procedure 6(b), "When an act may or must be done within a specific time, the court may, for good cause, extend the time . . . ." FED. R. CIV. P. 6(b). Here, there are two "good causes" for extending SRA's deadline for answering Defendants' motion to transfer.

### A. SRA Is Entitled to Discovery in Responding to Defendants' Motion.

First, SRA is entitled to the benefit of discovery in demonstrating the failure of Defendants' motion. Section 1404(a) permits a transfer "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C.A. § 1404(a). This inquiry in turn requires (1) weighing "the convenience of the parties in both venues," and (2) determining "whether the claims might have been brought in the suggested transferee district." *Novartis Vaccines & Diagnostics, Inc. v. Hoffman-LaRoche Inc.*, 2009 WL 349760, at *2 (E.D. Tex. Feb. 3, 2009). These elements entail multiple fact issues, and, in both cases, Defendants are uniquely in possession of much relevant evidence that SRA is entitled to discover before responding to Defendants' motion.

The first element in the § 1404(a) analysis is fact-intensive, and SRA is entitled to discovery from Defendants to demonstrate that Defendants' assertions are incorrect. The overarching issue is how "the convenience of the parties" weighs "in both venues." *Novartis*, 2009 WL 349760, at *2. Although Defendants were perfectly content with this Court as a forum

4

for over a year, they now contend that Texas is an inconvenient venue for them and their witnesses and that California is the center of gravity of their infringing activity. This contention entails fact issues too numerous to set forth completely here, but a broad sampling of the relevant factual inquiries is as follows:

- Whether and to what extent Defendants have maintained offices in and near this District, and what functions those offices serve in Defendants' businesses;

- Whether and to what extent Defendants have employed persons in and near this District, and what roles those employees have played in Defendants' businesses;

- Whether and to what extent Defendants have engaged in business activities in and near this District, and to what extent those business activities relate to the alleged infringement in this case; and

- The identity of witnesses, particularly third-party witnesses, in this District with whom Defendants have engaged in business activities, particularly Defendants' inducement of infringement.

This Court has expressly held that relevant factors concerning the "convenience" inquiry include "the discovery burden on parties," "the location of documentary evidence," and the locations of key witnesses. *Odom v. Microsoft Corp.*, 2009 WL 279968, at *3-4 (E.D. Tex. Jan. 30, 2009). In other words, the following questions, among others, will have a direct bearing on how this Court resolves Defendants' motion: Where have Defendants stored various types of documents, and in what form? Where have Defendants stationed various employees who will be witnesses in this case? How voluminous are Defendants' records regarding the various issues in this suit? SRA is entitled to discover from Defendants the answers to these and further related questions.

Not surprisingly, in view of the fact-based nature of the transfer inquiry, Defendants' motion itself contains numerous factual assertions—assertions that SRA is entitled to test through discovery. Defendants' opposition to a 60-day extension on the ground that "[w]e do not believe any discovery is necessary in order for SRA to prepare its opposition to our transfer

motion" is thus patently disingenuous. (Ex. A.) For example, Defendants claim that "a great number of key fact witnesses reside in the Northern District of California." (Mot. at 9.) SRA is entitled to test this assertion and determine who really are the "key" fact witnesses in this case and where they reside. Discovery is necessary for this; Defendants have unique knowledge of which persons in their organizations possess which types of proof as to which issues, and where they are located. Similarly, Defendants predicate their argument in part on the factual assertion that one of SRA's witnesses "travels regularly to California on business"—and therefore, so the argument goes, can travel to California without significant added inconvenience. (Mot. at 11.) SRA likewise is entitled to know how much of a burden it will be, in practical terms, for the key witnesses in Defendants' employ to travel to Texas. Again, this information is uniquely within the possession of Defendants, so discovery is necessary. As an additional example, Defendants claim in their motion that "[m]ost, if not all, of the relevant physical and documentary evidence is located outside this District. Indeed, the majority of that evidence is found in California." (Mot. at 12.) Again, SRA is entitled to test this assertion. Where exactly is the "relevant evidence" in this case, on an issue-by-issue basis? In what forms is that evidence currently maintained? How much of a burden would it entail to transfer that evidence to Texas or to California? Again, the answers to these and other relevant questions are solely within the possession of Defendants, so discovery is necessary.

Most tellingly, Defendants' own motion cites and is accompanied by multiple declarations in support of their arguments for dismissal. For Defendants to attach these declarations, yet claim that evidentiary issues are not implicated by their motion, is incredible. To cite portions of just one such declaration "Google regularly conducts business in the Northern District of California. For example, Google has key sales, finance, and engineering staff in the

Northern District of California, and Google engages in a range of ongoing activities in this region to develop, maintain, and increase its business. Google's Headquarters in California also serve as a center for its product research and development, product sales and licensing, and corporate marketing efforts." (Barea Decl. ¶ 4.) Defendants cannot make these assertions while in the same breath seeking to foreclose SRA from discovering the rest of the story—for example, to what extent Google conducts business in the Eastern District of Texas, what activities Google engages in here, and what aspects of its link-based search technology are sold, financed, engineered, developed, sold, licensed, or marketed in this District. Similarly, Defendants assert that "Google does not have any offices in the Eastern District of Texas" and "[t]he servers on which Google's search engines are run are not located in the Eastern District of Texas." (Barea Decl. ¶¶ 5, 7.) But does Google have offices near the Eastern District of Texas? And if Google has no offices here or near here *now*, did it have offices here when suit was filed in November 2007, as SRA suspects? Apart from offices, what other facilities does Google have in this district, and what functions do they serve? Defendants know full well that Google's alleged infringement extends far beyond its search engine. What other infringing technologies are run on servers in this district? As a final of many more possible examples, Defendants assert that "[k]ey engineers who work on Google's search technology are not located in the Eastern District of Texas." (Barea Decl. ¶ 8.) This raises the questions: Who are these supposedly "key" engineers, and where across the country are they located? Where are the engineers located who possess information relevant to this case but whom Google did not designate as "key"? Where are the engineers who work on the other infringing technologies?

Far from being idle inquiries, these are issues as to which, SRA's independent research indicates, Defendants have self-servingly mischaracterized the record in their brief. Put simply,

Defendants' assertion that "[t]he facts, witnesses, and evidence here have absolutely no connection to the Eastern District of Texas" is a blatant falsehood. (Mot. at 1.) On information and belief, Defendants connections with this district and with the State of Texas are both extensive and significant. For example, while Defendants claim that "Google does not have any offices in the Eastern District of Texas," (Barea Decl. ¶ 5), on information and belief, Google recently had, and perhaps still has, at least four offices in Texas, at least three of which are within fifty miles of the Eastern District of Texas. Similarly, while Defendants claim that "[t]he servers on which Google's search engines run are not located in the Eastern District of Texas," (Barea Decl. ¶ 7), on information and belief, Google houses at least one major data center in Texas—a facility where infringing activities occur literally on a twenty-four hour basis. As a third of many possible examples, while Defendants claim that "no Defendants have significant contacts with the Eastern District of Texas," on information and belief, Google derives tens of millions of dollars in revenue through infringing conduct in and near this District.

The possible examples go on, but the conclusion is simple: SRA is entitled to discovery regarding numerous issues that bear on the resolution of Defendants' motion. Much of the evidence necessary to test Defendants' factual contentions lies exclusively in the hands of Defendants. Therefore, sufficient time must be given for SRA to conduct discovery before responding to Defendants' motion to transfer.

The second element in the § 1404 analysis is also fact-intensive and calls for discovery. It requires determining whether "all Defendants are subject to personal jurisdiction [in the suggested transferee district]." *Id.* This analysis is fact-intensive. SRA does not dispute that Google, Yahoo!, IAC, and AOL are subject to personal jurisdiction in California. SRA does dispute, however, that Lycos is subject to personal jurisdiction in California, and SRA is entitled

to discovery to demonstrate that position. Specific fact issues respecting jurisdiction over Lycos include the following:

- Whether Lycos engaged in infringing conduct connected with California;
- Whether Lycos has continuous or systematic contacts with California;
- Whether and to what extent Lycos has offices or employees in California;
- Whether and to what extent Lycos does business in California;
- Whether and to what extent Lycos maintains property in California;
- Whether Lycos pays taxes in California;
- Whether Lycos is registered to do business in California.

There are many other such questions that directly bear on the propriety of a transfer in this case. But much evidence respecting these questions lies exclusively with Defendants. Therefore, SRA must be given time for discovery. The extension to May 8 should be granted.

B. <u>SRA's Lead Counsel Will Be Intensely Engaged in Pretrial and Trial Activities in Another Matter at Least Until Early April.</u>

The second reason why this Court should give SRA until May 8 to respond to Defendants' motion is that SRA's lead counsel is engaged in intense pretrial preparation in the case of *Quantum World v. Lenovo*, Civil Action No. 2:07-cv-24-CE, which is currently pending in this Court and is set for trial on March 23. Recent and ongoing pretrial preparation has included designation of deposition testimony, objections to same and counter-designations, designation of exhibits and objections to same, work on the joint pretrial order, attendance at a lengthy conference with opposing counsel regarding potential agreements on motions in limine, attendance at the Court's February 24 pretrial conference, jury selection on March 3, and presentation of two expert witnesses for deposition later this week as well as upcoming preparation of direct examination, cross-examination, and demonstrative exhibits. Once trial

9

begins on March 23, SRA's lead counsel is likely to be involved with the *Quantum World* action on a round-the-clock basis. It goes without saying that it is exceedingly difficult to secure discovery and respond to dispositive briefing in one case while engaged in intense pretrial preparation and trial in another case. Moreover, Defendants have not identified any discernible prejudice whatsoever that they would suffer from the requested extension. (*See* Ex. 1.) Indeed, because they were perfectly happy to wait fifteen months before filing this motion, one wonders why they suddenly are in such a rush, to the extent that the most they are willing to agree to is an extension of 22 days, to March 31—an extension that would require SRA to respond within two days of the *Quantum World* trial. Defendants themselves offer no clue.

## III. CONCLUSION

Because SRA requires time to conduct discovery related to Defendants' motion, and because SRA's lead counsel is engaged in intense pretrial and trial activities in another matter that is likely to last for several weeks, SRA respectfully requests this Court to grant it until May 8, 2009 to respond to Defendants' motion to transfer.

Respectfully submitted,

*Lee Kaplan* (by RD)
Lee L. Kaplan
LEAD ATTORNEY
State Bar No. 11094400
SMYSER KAPLAN & VESELKA, L.L.P.
700 Louisiana, Suite 2300
Houston, Texas 77002
(713) 221-2323
(713) 221-2320 (fax)
lkaplan@skv.com

Victor G. Hardy

State Bar No. 00790821
(Requesting Admission *Pro Hac Vice*)
Andrew G. DiNovo
State Bar No. 00790594
Adam G. Price
State Bar No. 24027750
Jay D. Ellwanger
State Bar No. 24036522
**DINOVO PRICE ELLWANGER LLP**
P.O. Box 201690
Austin, Texas 78720
(512) 681-4060
(512) 628-3410 (fax)
vhardy@dpelaw.com

*Of counsel:*

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
**CAPSHAW DERIEUX**
1127 Judson Road, Suite 220
P.O. Box 3999
Longview, TX 75606-3999
(903) 236-9800
(903) 236-8787 (fax)
ccapshaw@capshawlaw.com

Robert M. Parker
State Bar No. 15498000
Robert C. Bunt
State Bar No. 00787165
Charles Ainsworth
State Bar No. 0078352
**PARKER, BUNT & AINSWORTH, P.C.**
100 East Ferguson, Suite 1114
Tyler, Texas 75702
(903) 531-3535
(903) 533-9687 (fax)

## CERTIFICATE OF CONFERENCE

SRA's counsel has conferred with Defendants' counsel. Defendants' counsel have stated that they do not believe that SRA requires any discovery to response to their Motion to Transfer and that they cannot agree to an extension beyond March 31, 2009. See Exhibit 1 attached hereto.

_Lee Kaplan (by RD)_
Lee L. Kaplan

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record pursuant to Federal Rules of Civil Procedure on this the 4th day of March, 2009.

_Lee Kaplan (by RD)_
Lee L. Kaplan