## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| SOFTWARE RIGHTS ARCHIVE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 2:07-cv-511-CE |
| v. | § | |
| | § | |
| GOOGLE INC., YAHOO! INC., | § | JURY TRIAL DEMANDED |
| IAC SEARCH & MEDIA, INC., AOL LLC, | § | |
| and LYCOS, INC., | § | |
| | § | |
| Defendants. | § | |

### PLAINTIFF'S MOTION TO STRIKE INVALIDITY CONTENTIONS
### AND RESPONSE TO DEFENDANTS' MOTION FOR LEAVE
### TO AMEND AND SUPPLEMENT INVALIDITY CONTENTIONS

### TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ......................................................................................................... 1

ARGUMENT AND AUTHORITIES ............................................................................ 7

I.    Motion To Strike Invalidity Contentions ......................................................... 8

    A.    Under P.R. 3-3 and this Court's jurisprudence, invalidity contentions should be stricken when they lack the required specificity and fail to give notice of the contentions that the defendants actually intend to assert at trial. ........................................... 8

    B.    Defendants' invalidity contentions violate P.R. 3-3. ........................... 11

    C.    This Court should order Defendants to amend their invalidity contentions within ten days of its Order and identify no more than five obviousness combinations and five anticipatory prior art references per claim. ........................................................................ 13

II.    Response To Motion For Leave ....................................................................... 14

A.   Defendants cannot show good cause, first and foremost, because they have already violated P.R. 3-3, and further expanding their invalidity contentions would only do greater damage. ..........................................14

B.   Defendants cannot show good cause because their unprecedented request to introduce prior art over two years after filing fails the "diligence" requirement and would prejudice SRA and protract this litigation. ...................................................................................................15

CONCLUSION....................................................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Anascape, Ltd. v. Microsoft Corp.*,
    2008 WL 7180756, at *3 (E.D. Tex. May 1, 2008 ................................................... 9

*Comp. Acceleration Corp. v. Microsoft Corp.*,
    481 F. Supp. 2d 620, 624 (E.D. Tex. 2007)................................................... 8, 13

*Coopervision, Inc. v. Ciba Vision Corp.*,
    480 F. Supp. 2d 884, 887 (E.D. Tex. 2007)........................................................ 15

*Cummins-Allison Corp. v. SBM Co., Ltd.*,
    2009 WL 763926, at *4 (E.D. Tex. Mar. 19, 2009) ........................................... 11

*Finisar Corp. v. DirecTV Group, Inc.*,
    424 F. Supp. 2d 896, 901 (E.D. Tex. 2006)................................................... 19, 22

*Graham v. John Deere Co. of Kansas City*,
    383 U.S. 1, 33 (1966)............................................................................................ 20

*MASS Eng'd Design, Inc. v. Ergotron, Inc.*,
    250 F.R.D. 284, 286 (E.D. Tex. 2008) .......................................................... 17, 21

*Nike, Inc. v. Adidas Am. Inc.*,
    479 F. Supp. 2d 664, 670 (E.D. Tex. 2007)........................................................ 18

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    467 F.3d 1355, 1366 (Fed. Cir. 2006). ................................................................ 16

*Realtime Data, LLC v. Packeteer, Inc.*,
    2009 WL 4782062, at *3 (E.D. Tex. Dec. 8, 2009).......................................... 10, 14

*Saffran v. Johnson & Johnson*,
    2:07 CV 0451 (TJW) (E.D. Tex. Feb. 24, 2009))........................................... passim

*STMicroelectronics, Inc. v. Motorola, Inc.*,
   307 F. Supp. 2d 845, 851 (E.D. Tex. 2004) ........................................................... 15

*Sunpower Corp. Sys. v. Cunlink Corp.*,
   2009 WL 1657987, at *1 (N.D. Cal. 2009) ............................................................ 16

*West v. Jewelry Innovations, Inc.*,
   2008 WL 4532558, at *3 (N.D. Cal. 2008) ........................................................... 17

This Court should strike Defendants' invalidity contentions as non-compliant with P.R. 3-3 because:

- They are 13,000 pages long.

- They identify trillions of obviousness combinations and reserve the right to assert countless further undisclosed combinations.

- They provide thousands of meaningless boilerplate paragraphs where they should provide specific pinpoint references to prior art excerpts.

- They explicitly purport to identify mere examples, rather than a complete list, of prior art references and combinations.

This Court should reject Defendants' request to further expand their invalidity contentions because:

- Their proposed amended and supplemental invalidity contentions not only fail to correct the gross deficiencies in the original contentions but expand and worsen those violations.

- Their failure to proffer the proposed prior art references any sooner than December 18, 2009—over two years after this suit was filed and nearly one year after their due date—defeats the requirement that Defendants have been diligent.

## INTRODUCTION

Software Rights Archive, LLC ("SRA") sued Google Inc., Yahoo! Inc., IAC Search & Media, Inc., AOL LLC, and Lycos, Inc. ("Defendants") on November 21, 2007. SRA alleged that Defendants had infringed and were continuing to infringe U.S. Patent Nos. 5,544,352 ("the '352 patent"), 5,832,494 ("the '494 patent"), and 6,233,571 ("the '571 patent").

On October 31, 2008, SRA served its infringement contentions on Defendants. These contentions, accompanied by detailed claim charts, alleged infringement of around 60 claims. This Court's Patent Local Rules provide defendants 45 days after service of the infringement contentions to serve their own invalidity contentions. *See* P.R. 3-3. Thus, per the Rules Defendants' invalidity contentions were to be due December 15, 2008. With SRA's consent,

however, Defendants requested, and this Court granted, a one-month extension of that date, to January 16, 2009. (Disc. Order, Dkt. No. 82, at 3.) Subsequently, again with SRA's consent, Defendants requested, and this Court granted, a further extension to January 23, 2009. (Extn. Order, Dkt. No. 116, at 2.) Defendants served their invalidity contentions on January 23, 2009, a full one year and two months after this case was filed.

Defendants' invalidity contentions were around 13,000 pages long.[1] (SRA's infringement contentions, by comparison, were around 650 pages long—5% the length of Defendants' invalidity contentions.) Defendants asserted anticipation, obviousness, and other defenses against each of SRA's patents.

As to anticipation, Defendants asserted 57 items of prior art against the '352 patent, 79 items of prior art against the '494 patent, and 71 items of prior art against the '571 patent. (*See* Inv. Discl., att. as Ex. 1, at 15-16, 34-36, 59-61.) P.R. 3-3 requires defendants to provide "[a] chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found . . . ." P.R. 3-3. Defendants did not provide such a chart. Instead, they provided charts that failed—in fact, did not even attempt—to identify, for many items of prior art, where many elements of many asserted claims allegedly could be found. Defendants' claim charts were replete with vacuous language included just to avoid submitting blanks. For example, Defendants asserted the following boilerplate language over 900 times in contesting the '494 patent alone:

> Disclosed either expressly or inherently in the teachings of the reference and its incorporated disclosures taken as a whole, or in combination with the state of the art at the time of the alleged invention, as evidenced by substantial other references identified in Defendants' P.R. 3-3 statement and accompanying charts. Rather than repeat those disclosures here, they are incorporated by reference into this chart.

---

[1] This number does not include the prior art itself.

(*E.g.*, De Bra Claim Chart, att. as Ex. 2, at 1-28; Bichteler Claim Chart, att. as Ex. 3, at 1-13.)

Defendants also made clear that they were expressly withholding from disclosure many prior art contentions that they intended to use, and instead were disclosing mere "examples" of their contentions.  They said,

> The accompanying invalidity claim charts list specific examples of where prior art references disclose, either expressly or inherently, each limitation of the asserted claims . . . .  The references, however, may contain additional support upon which Defendants may rely. . . .  Defendants may also rely on other documents and information, including cited references and prosecution histories for the patents-in-suit, and expert testimony . . . .

(Inv. Discl. at 4.)  Likewise, Defendants' claim charts frequently employed the "*see, e.g.,*" designation in identifying allegedly relevant prior art excerpts.  (*E.g.*, De Bra Claim Chart at 1-28; Bichteler Claim Chart at 1-13.)  Defendants' invalidity contentions left SRA guessing as to which items of prior art Defendants actually intend to use and what contentions Defendants actually intend to assert at trial.

Defendants' obviousness disclosures were even more deficient than their anticipation disclosures.  P.R. 3-3 requires Defendants to provide "[t]he identity of each item of prior art that allegedly . . .  renders [each asserted claim] obvious."  P.R. 3-3.  Defendants did not do this. They did provide a lengthy list of references for each patent—81 for the '352 patent; 110 (along with "[r]eferences and prior art cited above as anticipating and/or rendering obvious the '352 Patent" (Inv. Discl. at 40)) for the '494 patent; and 111 (along with "[r]eferences and prior art cited above as anticipating and/or rendering obvious the '352 and '494 Patents . . . ." (*Id.* at 66)) for the '571 patent.  (*See id.* at 15-19, 34-41, 59-66.)  And Defendants added, vaguely:  "In addition, Defendants incorporate by reference each and every prior art reference of record in the prosecution of the patents-in-suit and related applications, including the statements made therein by the applicant and the examiner, the prior art discussed in the specification, and any other

statements found in the intrinsic record." (*Id.* at 66.) But Defendants expressly disavowed any notion that their disclosures were complete, emphasizing instead that their prior art identifications were merely "exemplary": "Defendants identify the following additional exemplary prior art references . . . ." (*Id.* at 17.) SRA thus cannot know what prior art items Defendants intend to assert down the road but presently are withholding.

P.R. 3-3 also dictates, "If a combination of items of prior art makes a claim obvious, each such combination, and the motivation to combine such items, must be identified." P.R. 3-3. Defendants did not identify each such combination. Rather, Defendants provided claim charts identifying an incomprehensible number of "exemplary combinations" of prior art. For example, Defendants' obviousness disclosure for just Claim 26 of the '352 patent looked like this:

| Claim Text from '352 Patent | References |
| --- | --- |
| 26. A non-semantical method for numerically representing objects in a computer database and for computerized searching of the numerically represented objects in the database, wherein direct and indirect relationships exist between objects in the database, comprising: | Salton, 1971;Garfield, 1979;Fox/Smart, 1983;Fox Collections, 1983;Fox Thesis, 1983;Fox, 1984;Fox, 1985;Armstrong, 1988;Fox, 1988;Croft, 1989;Croft, Lucia, 1989;Frisse/Cousins, 1989;Thompson, 1989;Kommers, 1990;Nielsen, 1990b;Berk, 1991;Dunlop, 1991;Turtle, 1991;Turtle & Croft, 1991;Shaw Part I, 1991;Shaw Part II, 1991;Betrabet, 1993;Brunei, 1993;Bourne and Hahn, 2003;TIP;Frei & Steiger, 1992;Shimko, 1974;Bichteler & Eaton, 1977;Salton, 1970;Salton and McGill, 1983;Salton, 1968;Tapper, 1982;Frisse, 1988;Salton, 1963;Kochtanek, 1982;Gelbart, 1991;Croft, 1993;Goffman, 1969;Pinski, 1976;Garner, 1967;Botafogo, 1992;Alain, 1992;Shepherd, 1990;Schiminovich, 1971;Guinan, 1992;Salton, 1988;Nielsen, 1990;Burt, 1991;Lucarella, 1990;U.S. Pat. No. 5,446,891;Rose, 1989;UCINET, 1992;Belew, 1986;Salton, 1975;Rose, 1991;Pirolli, 19996;Bichteler & Parsons, 1974;Rada, 1991;Intermedia;Chen Thesis, 1992;Weiss, 1996; ENVISION;SMART |
| [26a] marking objects in the database so that each marked object may be individually identified by a computerized search; | Kessler, 1967;Salton, 1971;Garfield, 1979;Fox/Smart, 1983;Fox Collections, 1983;Fox Thesis, 1983;Fox, 1984;Fox, 1985;Armstrong, 1988;Fox, 1988;Croft, 1989;Croft, Lucia, 1989;Frisse/Cousins, 1989;Thompson, 1989;Kommers, 1990;Nielsen, 1990b;Berk, 1991;Dunlop, 1991;Turtle, 1991;Turtle & Croft, 1991;Shaw Part I, 1991;Shaw Part II, 1991;Betrabet, 1993;Brunei, 1993;Bourne and Hahn, 2003;TIP;Frei & Steiger, 1992;Shimko, 1974;Bichteler & Eaton, 1977;Salton, 1970;Salton and McGill, 1983;Salton, 1968;Tapper, 1982;Frisse, 1988;Salton, 1963;Kochtanek, 1982;Gelbart, 1991;Croft, 1993;Goffman, 1969;Pinski, 1976;Garner, 1967;Alain, 1992;Shepherd, 1990;Guinan, 1992;Salton, 1988;Nielsen, 1990;Burt, 1991;Lucarella, 1990;U.S. Pat. No. 5,446,891;Rose, 1989;UCINET, 1992;Belew, 1986;Rose, 1991;Pirolli, 19996;Bichteler & Parsons, 1974;Rada, 1991;Intermedia;Chen Thesis, 1992;ENVISION;SMART |
| [26b] creating a first numerical representation for each identified object in the database based upon the object's direct relationship with other objects in the database; | Kessler, 1967;Salton, 1971;Garfield, 1979;Fox/Smart, 1983;Fox Collections, 1983;Fox Thesis, 1983;Fox, 1984;Fox, 1985;Armstrong, 1988;Fox, 1988;Croft, 1989;Croft, Lucia, 1989;Frisse/Cousins, 1989;Thompson, 1989;Kommers, 1990;Nielsen, 1990b;Berk, 1991;Dunlop, 1991;Turtle, 1991;Turtle & Croft, 1991;Shaw Part I, 1991;Shaw Part II, 1991;Chen, 1992;Betrabet, 1993;Brunei, 1993;Bourne and Hahn, 2003;TIP;Frei & Steiger, 1992;Shimko, 1974;Bichteler & Eaton, 1977;Salton, 1970;Salton and McGill, 1983;Salton, |
| | 1968;Tapper, 1982;Frisse, 1988;Salton, 1963;Kochtanek, 1982;Gelbart, 1991;Croft, 1993;Goffman, 1969;Pinski, 1976;Garner, 1967;Botafogo, 1992;Shepherd, 1990;Schiminovich, 1971;Guinan, 1992;Salton, 1988;Nielsen, 1990;Burt, 1991;Lucarella, 1990;U.S. Pat. No. 5,446,891;Rose, 1989;UCINET, 1992;Belew, 1986;Rose, 1991;Pirolli, 19996;Bichteler & Parsons, 1974;Rada, 1991;Intermedia;Chen Thesis, 1992; Weiss, 1996; ENVISION;SMART |

| | |
|---|---|
| [26c] storing the first numerical representations for use in computerized searching; | Salton, 1971;Garfield, 1979;Fox/Smart, 1983;Fox Collections, 1983;Fox Thesis, 1983;Fox, 1984;Fox, 1985;Armstrong, 1988;Fox, 1988;Croft, 1989;Croft, Lucia, 1989;Frisse/Cousins, 1989;Thompson, 1989;Kommers, 1990;Nielsen, 1990b;Berk, 1991;Dunlop, 1991;Turtle, 1991;Turtle & Croft, 1991;Shaw Part I, 1991;Shaw Part II, 1991;Chen, 1992;Betrabet, 1993;Bourne and Hahn, 2003;TIP;Frei & Steiger, 1992;Shimko, 1974;Bichteler & Eaton, 1977;Salton, 1970;Salton and McGill, 1983;Salton, 1968;Tapper, 1982;Frisse, 1988;Salton, 1963;Kochtanek, 1982;Gelbart, 1991;Croft, 1993;Goffman, 1969;Pinski, 1976;Garner, 1967;Botafogo, 1992;Shepherd, 1990;Schiminovich, 1971;Guinan, 1992;Salton, 1988;Nielsen, 1990;Burt, 1991;Lucarella, 1990;U.S. Pat. No. 5,446,891;Rose, 1989;UCINET, 1992;Belew, 1986;Rose, 1991;Pirolli, 1996b;Bichteler & Parsons, 1974;Rada, 1991;Intermedia;Chen Thesis, 1992; Weiss, 1996; ENVISION;SMART |
| [26d] analyzing the first numerical representations for indirect relationships existing between or among objects in the database; | Salton, 1971;Garfield, 1979;Fox/Smart, 1983;Fox Collections, 1983;Fox Thesis, 1983;Fox, 1984;Fox, 1985;Armstrong, 1988;Fox, 1988;Croft, 1989;Croft, Lucia, 1989;Frisse/Cousins, 1989;Thompson, 1989;Kommers, 1990;Nielsen, 1990b;Berk, 1991;Dunlop, 1991;Turtle, 1991;Turtle & Croft, 1991;Shaw Part I, 1991;Shaw Part II, 1991;Chen, 1992;Betrabet, 1993;Bourne and Hahn, 2003;TIP;Frei & Steiger, 1992;Shimko, 1974;Bichteler & Eaton, 1977;Salton, 1970;Salton and McGill, 1983;Salton, 1968;Tapper, 1982;Frisse, 1988;Salton, 1963;Kochtanek, 1982;Gelbart, 1991;Croft, 1993;Goffman, 1969;Pinski, 1976;Garner, 1967;Botafogo, 1992;Shepherd, 1990;Schiminovich, 1971;Guinan, 1992;Salton, 1988;Nielsen, 1990;Burt, 1991;Lucarella, 1990;U.S. Pat. No. 5,446,891;Rose, 1989;UCINET, 1992;Belew, 1986;Salton, 1975;Rose, 1991;Pirolli, 1996b;Bichteler & Parsons, 1974;Rada, 1991;Intermedia;Chen Thesis, 1992; Weiss, 1996; ENVISION;SMART |
| [26e] generating a second numerical representation of each object based on the analysis of the first numerical representation; | Salton, 1971;Garfield, 1979;Fox/Smart, 1983;Fox Collections, 1983;Fox Thesis, 1983;Fox, 1984;Fox, 1985;Armstrong, 1988;Fox, 1988;Croft, 1989;Croft, Lucia, 1989;Frisse/Cousins, 1989;Thompson, 1989;Kommers, 1990;Nielsen, 1990b;Berk, 1991;Dunlop, 1991;Turtle, 1991;Turtle & Croft, 1991;Shaw Part I, 1991;Shaw Part II, 1991;Chen, 1992;Betrabet, 1993;Bourne and Hahn, 2003;TIP;Frei & Steiger, 1992;Shimko, 1974;Bichteler & Eaton, 1977;Salton, 1970;Salton and McGill, 1983;Salton, 1968;Tapper, 1982;Frisse, 1988;Salton, 1963;Kochtanek, 1982;Croft, 1993;Goffman, 1969;Pinski, 1976;Garner, 1967;Botafogo, 1992;Shepherd, 1990;Schiminovich, 1971;Guinan, 1992;Salton, 1988;Burt, 1991;Lucarella, 1990;U.S. Pat. No. 5,446,891;Rose, 1989;UCINET, 1992;Belew, 1986;Salton, 1975;Rose, 1991;Pirolli, 1996b;Bichteler & Parsons, 1974;Rada, 1991;Intermedia;Chen Thesis, 1992; Weiss, 1996; ENVISION;SMART |
| [26f] storing the second numerical representation for use in computerized searching; and | ;Salton, 1971;Garfield, 1979;Fox/Smart, 1983;Fox Collections, 1983;Fox Thesis, 1983;Fox, 1984;Fox, 1985;Armstrong, 1988;Fox, 1988;Croft, 1989;Croft, Lucia, 1989;Frisse/Cousins, 1989;Thompson, 1989;Kommers, 1990;Nielsen, 1990b;Berk, 1991;Dunlop, 1991;Turtle, 1991;Turtle & Croft, 1991;Shaw Part I, 1991;Shaw Part II, 1991;Chen, 1992;Betrabet, 1993;Bourne and Hahn, 2003;TIP;Frei & Steiger, 1992;Shimko, 1974;Bichteler & Eaton, 1977;Salton, 1970;Salton and McGill, 1983;Salton, 1968;Tapper, 1982;Frisse, 1988;Salton, 1963;Kochtanek, 1982;Gelbart, 1991;Croft, 1993;Goffman, 1969;Pinski, 1976;Garner, 1967;Botafogo, 1992;Shepherd, 1990;Schiminovich, 1971;Guinan, 1992;Salton, 1988;Nielsen, 1990;Burt, 1991;Lucarella, 1990;U.S. Pat. No. 5,446,891;Rose, 1989;UCINET, 1992;Belew, 1986;Salton, 1975;Rose, 1991;Pirolli, 1996b;Bichteler & Parsons, 1974;Rada, 1991;Intermedia;Chen Thesis, 1992; Weiss, 1996; ENVISION;SMART |
| [26g] searching the objects in the database using a computer and the stored second numerical representations, wherein the search identifies one or more of the objects in the database. | Salton, 1971;Garfield, 1979;Fox/Smart, 1983;Fox Collections, 1983;Fox Thesis, 1983;Fox, 1984;Fox, 1985;Armstrong, 1988;Fox, 1988;Croft, 1989;Croft, Lucia, 1989;Frisse/Cousins, 1989;Thompson, 1989;Kommers, 1990;Nielsen, 1990b;Berk, 1991;Dunlop, 1991;Turtle, 1991;Turtle & Croft, 1991;Shaw Part I, 1991;Shaw Part II, 1991;Chen, 1992;Betrabet, 1993;Brunei, 1993;Bourne and Hahn, 2003;TIP;Frei & Steiger, 1992;Shimko, 1974;Bichteler & Eaton, 1977;Salton, 1970;Salton and McGill, 1983;Salton, 1968;Tapper, 1982;Frisse, 1988;Salton, 1963;Kochtanek, 1982;Gelbart, 1991;Croft, 1993;Goffman, 1969;Pinski, 1976;Garner, 1967;Alain, 1992;Shepherd, 1990;Schiminovich, 1971;Guinan, 1992;Salton, 1988;Burt, 1991;Lucarella, 1990;U.S. Pat. No. 5,446,891;Rose, 1989;UCINET, 1992;Belew, 1986;Salton, 1975;Rose, 1991;Pirolli, 1996b;Bichteler & Parsons, 1974;Rada, 1991;Intermedia;Chen Thesis, 1992; Weiss, 1996; ENVISION;SMART |

(Claim 26 Exemplary Combin'ns, att. as Ex. 4, at 1-3.)   Defendants   instructed   that "combinations of two or more of the references identified in the chart [] render the claims obvious."  (*Id.* at 1.)  In other words, as to Claim 26, Defendants disclosed only that they would use one or more of over 221 trillion combinations.  That was not very helpful.

Defendants  in  fact  rendered  even  these  "exemplary  combinations"  meaningless  by indicating that they would rely not only on those combinations, but on any combination of

references they desired: "In addition to the exemplary combinations of prior art . . . , Defendants reserve the right to rely on any other combination of any prior art disclosed herein." (Inv. Discl. at 20.) The number of those "any other combination[s]" to which Defendants referred, needless to say, had more zeros than anyone would care to count. Defendants then went even a step further and asserted that "each prior art reference may be combined with . . . information known to persons skilled in the art at the time of the alleged invention," along with "any statements in the intrinsic record of patents-in-suit and related applications." (*Id.* at 19.)

In short, Defendants did everything in their power to disclose nothing in their P.R. 3-3 disclosures. Instead, Defendants forced SRA to expend hundreds of thousands of dollars in expert and attorney time trying to divine Defendants' contentions, with no guidance from Defendants whatsoever.

SRA complained repeatedly to Defendants about their insufficient invalidity contentions. In addition to multiple telephone calls, SRA sent Defendants two letters explaining its concerns. On March 11, 2009, SRA stated:

> We are writing you because your invalidity contentions do not comply with P.R. 3-3 . . . . Defendants' invalidity contentions fail to give any meaningful notice of Defendants' actual positions . . . . Defendants have apparently buried their invalidity positions somewhere within 13,000-plus pages of claim charts. . . . The claim charts fail to identify specific portions of the references upon which Defendants rely for each claim element . . . . [T]hese charts disclose millions, if not billions, of combinations of references. This is precisely the type of limitless combinations that led Judge Ward to strike the *Saffran* defendants' claim charts.

(3/11/09 Hardy-Defs. Letter, att. as Ex. 5, at 2 (referring to Order, *Saffran v. Johnson & Johnson*, 2:07 CV 0451 (TJW) (E.D. Tex. Feb. 24, 2009)).) Likewise, on July 8, 2009, SRA stated: "We are concerned because the Invalidity Contentions state on page 4 that your invalidity claim charts are merely illustrative or representative of Defendants' complete invalidity contentions for trial." (7/8/09 Hardy-Defs. Letter, att. as Ex. 6, at 1-2.) Further, "[Y]ou[] fail[ed] to identify where

specifically in each alleged item of prior art each element of the asserted claims is found . . . ." (*Id.* at 2.)

Defendants dismissed SRA's concerns.  Defendants denied that 13,000 pages was excessive:  "At the outset, we disagree that *Saffran* holds that Defendants' Invalidity Contentions are somehow deficient because of their length . . . ." (3/27/09 Hung-Hardy Letter, att. as Ex. 7, at 1.)  Defendants also attempted to justify that length by complaining about SRA's infringement allegations:  "While Defendants' claim charts admittedly are quite long, they are necessarily so.  In this case, SRA has alleged that *five* different defendants infringe *64* claims of *three* different patents." (*Id.* (emphasis in original).)  Further, "Defendants struggled to understand the positions that SRA might be taking on infringement and how those positions might impact invalidity." (*Id.* at 3.)  Defendants never even attempted to explain how anything—let alone SRA's allegations—"necessitated" their using over 900 paragraphs of boilerplate anticipation allegations for one patent alone or their assertion of trillions of obviousness combinations.  To this day, Defendants have neither pared down nor clarified their invalidity contentions.

To the contrary, over two years after this case was filed, and almost one year after submitting their original 13,000 pages and over 100 prior art references, Defendants now come to this Court claiming that they have not had sufficient time to prepare their invalidity defenses and should be permitted to add new references and contentions at this late date.  This Court should deny Defendants' request, strike their invalidity contentions, and require them to comply with P.R. 3-3.

## ARGUMENT AND AUTHORITIES

This Court should grant SRA's motion to strike Defendants' invalidity contentions, and deny Defendants' motion to supplement their invalidity contentions, because Defendants' 13,000

pages of uninformative disclosures violated P.R. 3-3, and further, Defendants have not shown good cause for supplementing at this late date.

I.   <u>**Motion To Strike Invalidity Contentions**</u>

This Court should strike Defendants' invalidity contentions, because they violate P.R. 3-3's disclosure requirements.

   A.   **Under P.R. 3-3 and this Court's jurisprudence, invalidity contentions should be stricken when they lack the required specificity and fail to give notice of the contentions that the defendants actually intend to assert at trial.**

The Local Patent Rules "exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases . . . ." *Comp. Acceleration Corp. v. Microsoft Corp.*, 481 F. Supp. 2d 620, 624 (E.D. Tex. 2007) (internal quotation marks omitted). They are intended "to speed up the litigation process and make it less expensive." *Id.*

One of these rules, P.R. 3-3, requires defendants to provide invalidity contentions that disclose at an early date the specific anticipation and obviousness positions that they intend to assert at trial. As to anticipation, P.R. 3-3(c) requires Defendants to provide "[a] chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found . . . ." P.R. 3-3(c). As to obviousness, P.R. 3-3(b) requires that "[i]f a combination of items of prior art makes a claim obvious, each such combination, and the motivation to combine such items, must be identified." P.R. 3-3(b). P.R. 3-3(a) also requires, as to both defenses, that defendants provide a complete list of the prior art items on which defendants intend to rely: "[E]ach party opposing a claim of patent infringement[] shall . . . identi[fy] each item of prior art that allegedly anticipates each asserted claim or renders it obvious." P.R. 3-3(a).

These disclosure requirements "are a way to streamline the discovery process." *Anascape, Ltd. v. Microsoft Corp.*, 2008 WL 7180756, at *3 (E.D. Tex. May 1, 2008. They are "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed. The purpose of the rules is to put the parties on notice of the information its adversary anticipates using at trial." Order at 1, *Saffran v. Johnson & Johnson*, 2:07 CV 0451 (TJW) (E.D. Tex. Feb. 24, 2009).

This Court has stricken contentions that skirted or only nominally complied with these rules, undermining the policies on which they are based:

- This Court has stricken contentions that were overly lengthy and effectively buried the defendants' contentions in a haystack of prior art references. *See id.* at 1-2 ("The defendants' almost 800 pages of 'Invalidity Contentions' do not put the plaintiffs on real or useful notice.").

- This Court has stricken contentions that failed to identify the specific combinations that the defendants intended to use at trial. *Id.* at 2 ("The defendants' current 'Invalidity Contentions' are an attempt to end run the rules. They do not specifically identify combinations of references that the defendants anticipate using at trial . . . .").

- This Court has stricken contentions that purported to set forth mere examples, rather than a complete list, of prior art items on which the defendants intended to rely. *Id.* at 2 ("[T]hey include language purporting to make the contentions merely illustrative.").

- This Court has stricken contentions that combined prior art references with "information known to persons skilled in the art." *See Realtime Data, LLC v. Packeteer, Inc.*, 2009 WL 4782062, at *3 (E.D. Tex. Dec. 8, 2009) ("[T]he purpose of the Patent Rules is to avoid reliance on the amorphous knowledge of one of ordinary skill in the art.").

• This Court has annulled language by defendants purporting to reserve the right to combine any charted references—such as language that prior art can render a claim obvious when "viewed alone or in combination with other prior art references." *See id.* at *3 ("[T]he Court does not find that reserving the right to combine any charted prior art references offers a plaintiff sufficient notice to adequately rebut a defendant's largely undisclosed invalidity theories. Language preserving a defendant an opportunity to later rely upon undisclosed combinations does not clearly suggest the combination in the manner required by Patent Rule 3-3." (internal quotation marks omitted)).

• This Court has stricken contentions that did not provide notice of defendants' specific invalidity arguments for each element of each challenged claim. *See id.* ("Citrix was required to submit charts for any asserted prior art reference providing notice as to how each claim element is met—claim-by-claim and element-by element."); *Cummins-Allison Corp. v. SBM Co., Ltd.*, 2009 WL 763926, at *4 (E.D. Tex. Mar. 19, 2009) ("Defendants are required to submit Invalidity Charts to provide notice of how each claim element is met. Failure to provide the specific reference that allegedly reads on a claim limitation of the '806 Patent does not place Plaintiff on sufficient notice.").

• This Court has held irrelevant to the sufficiency of invalidity contentions claims that the plaintiffs' infringement contentions were overbroad. *See Cummins-Allison*, 2009 WL 763926, at *3 ("While Plaintiff has undoubtedly engaged in tactical games in an attempt to gain an advantage by asserting more than 200 claims, having only pared them down to 116 claims at the time Defendants served their Invalidity Contentions, Defendants cannot be excused for neglecting to file complete Invalidity Contentions.").

**B.      Defendants' invalidity contentions violate P.R. 3-3.**

Defendants' invalidity contentions violate every one of the P.R. 3-3 principles:

- They are absurdly lengthy.  Defendants' invalidity contentions are *13,000* pages long—over 16 times longer than the contentions stricken in *Saffran*—and they assert 81 items of prior art against the '352 patent, 110 items of prior art against the '494 patent, and 111 items of prior art against the '571 patent.  (*See* Inv. Discl. at 15-19, 34-41, 59-66.)

- They fail to identify the specific combinations of references that Defendants intend to assert in arguing obviousness.  Instead, they identify *trillions* of combinations and then assert that Defendants may go even beyond those bounds.

- They purport to set forth mere examples, rather than a complete list, of prior art items on which Defendants intend to rely—for example:  "The accompanying invalidity claim charts list specific examples of where prior art references disclose, either expressly or inherently, each limitation of the asserted claims . . . .  The references, however, may contain additional support upon which Defendants may rely."  (Inv. Discl. at 4.)

- They reserve the right to combine disclosed prior art references with amorphous knowledge of persons skilled in the art—for example:  "[E]ach prior art reference may be combined with . . .  information known to persons skilled in the art at the time of the alleged invention . . . ."  (*Id.* at 19.)

- They reserve the right to combine any disclosed prior art references with any other disclosed prior art references—for example:  "Defendants reserve the right to rely on any . . . combination of any prior art disclosed herein."  (*Id.* at 20.)

- They fail to provide notice of Defendants' anticipation contentions for each element of each challenged claim. Instead, they provide the following meaningless boilerplate throughout—for example, over 900 times in challenging the '494 patent alone:

> Disclosed either expressly or inherently in the teachings of the reference and its incorporated disclosures taken as a whole, or in combination with the state of the art at the time of the alleged invention, as evidenced by substantial other references identified in Defendants' P.R. 3-3 statement and accompanying charts. Rather than repeat those disclosures here, they are incorporated by reference into this chart.

(*E.g.,* De Bra Claim Chart at 1-28; Bichteler Claim Chart at 1-13.)

- They reserve the right, regarding obviousness, to combine any disclosed prior art references with any other disclosed prior art references—for example: "Defendants reserve the right to rely on any . . . combination of any prior art disclosed herein." (Inv. Discl. at 20.)

- They falsely, hypocritically (since their invalidity contentions are 20 times the length of SRA's infringement contentions), and irrelevantly claim that their non-compliance was the result of "the breadth of SRA's infringement contentions." (Defs.' Mot., Dkt. No. 198, at 7.)

In short, Defendants' invalidity contentions trample both the spirit and the letter of P.R. 3-3. They do not provide SRA with "notice of the information its adversary anticipates using at trial." Order at 1, *Saffran*, 2:07 CV 0451 (TJW). Rather, they hide that information in an ocean of references and theoretical combinations. They will help neither to "speed up the litigation process and make it less expensive," *Comp. Acceleration*, 481 F. Supp. 2d at 624, nor to "streamline the discovery process." *Anascape*, 2008 WL 7180756, at *3. Rather, Defendants have forced SRA to waste months of time and hundreds of thousands of dollars trying to divine their invalidity positions, and they are now wasting this Court's resources by forcing this Court to enforce compliance. The invalidity contentions reflect no effort by Defendants to "crystallize their theories of the case early in the litigation and to adhere to those theories once they have

been disclosed." Order at 1, *Saffran*, 2:07 CV 0451 (TJW) (internal quotation marks omitted). Rather, they reflect a transparent strategy of keeping options open and hiding the ball until the very last minute, to ambush SRA at trial.

**C.** **This Court should order Defendants to amend their invalidity contentions within ten days of its Order and identify no more than five obviousness combinations and five anticipatory prior art references per claim.**

This Court should strike Defendants' invalidity contentions and permit Defendants to serve amended contentions within ten days that assert no more than five obviousness combinations and no more than five anticipatory prior art references per claim. Further, this Court should order Defendants to attach detailed claim charts identifying the specific language on which they intend to rely. Such a ruling would closely resemble this Court's ruling last month in *Realtime Data, LLC v. Packeteer, Inc.*, 2009 WL 4782062 (E.D. Tex. Dec. 8, 2009). In *Realtime Data*, this Court ruled that the defendant's invalidity contentions failed to comply with P.R. 3-3, and as remedies "limited [the defendant] to asserting no more than five obviousness combinations," ordered the defendant to "identify these combinations by [three days after the date of the order]," and ordered the defendant "to serve its amended invalidity contentions, incorporating these combinations pursuant to P.R. 3-3, by [seven days after the date of the order]." *Realtime Data*, 2009 WL 4782062, at *4.

Such an order also would enforce compliance with P.R. 3-3 and its purposes of requiring notice and enabling efficient resolution. At 13,000 pages, chock-full of meaningless boilerplate, and disclosing over 100 prior art items and literally trillions of combinations, Defendants' current invalidity contentions violate P.R. 3-3 and its purposes. SRA has wasted hundreds of thousands of dollars and many months attempting to discern Defendants' invalidity positions, and SRA has spoken multiple times and sent multiple letters to Defendants requesting clarification of Defendants' positions, to which requests Defendants have responded dismissively

and in bad faith.  SRA now has no ability to respond to Defendants' invalidity positions and lacks the time and resources, given that this case is two-thirds done, to respond to a slew of arguments.  Defendants know full well that, as a practical matter, they will have to pare down their invalidity defenses to a handful of anticipation and obviousness arguments.  They have had far more time than the ordinary litigant to keep their options open.  This Court should order them to crystallize and disclose their actual arguments for trial now.

## II.     RESPONSE TO MOTION FOR LEAVE

This Court should forbid Defendants from further expanding their already non-compliant invalidity contentions.  Under this Court's Local Rules, "Amendment or supplementation [of] . . . Invalidity Contentions . . . may be made . . . only upon a showing of good cause."  P.R. 3-6(b). The intent behind this exception is "not to create supposed loopholes through which parties may practice litigation by ambush."  *Coopervision, Inc. v. Ciba Vision Corp.*, 480 F. Supp. 2d 884, 887 (E.D. Tex. 2007) (internal quotation marks omitted).  Rather, this Court has a "duty to avoid unfairly prejudicing [parties] through eleventh-hour alterations."  *Id.* (internal quotation marks omitted).  Defendants bear the burden of demonstrating good cause, and unless Defendants do so, this Court should deny their motion.  *See STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F. Supp. 2d 845, 851 (E.D. Tex. 2004) (identifying the movant as the party bearing the "good cause burden").

### A.     Defendants cannot show good cause, first and foremost, because they have already violated P.R. 3-3, and further expanding their invalidity contentions would only do greater damage.

Defendants cannot show good cause for further expanding their invalidity contentions, first and foremost, because they have already violated P.R. 3-3 in multiple respects with their grossly overbroad and non-specific disclosures.  Where P.R. 3-3 is intended to require notice so as to enable efficient litigation, Defendants have already caused significant damage by

withholding notice and forcing SRA to waste many months and hundreds of thousands of dollars. Defendants' effort to expand their contentions would only further undermine this Court's policies by generating only more confusion and causing only more wastage of time and money. This is the opposite of "good cause." For the reasons articulated for striking Defendants' invalidity contentions, this Court should, *a fortiori*, deny Defendants' motion for leave.

> **B.** **Defendants cannot show good cause because their unprecedented request to introduce prior art over two years after filing fails the "diligence" requirement and would prejudice SRA and protract this litigation.**

Even setting aside Defendants' violations, Defendants have not demonstrated good cause. First, demonstrating good cause "requires a showing of diligence." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006).[2] Defendants have not shown diligence. Even assuming they had never seen SRA's patents before this suit was filed (which is not the case), Defendants had fourteen months from filing to identify prior art and construct invalidity contentions. What is their excuse for delay? Or their showing of good cause? Nowhere have they identified what prior art searches they conducted in the fourteen months between the filing of this case and the date they submitted their invalidity contentions, nor why those searches should be deemed to constitute "diligence." Defendants' claims of diligence are conclusory and devoid of substance: "Defendants prepared and timely served their original invalidity contentions. Afterward, . . . Defendants continued to develop their invalidity defenses. Defendants' continuing diligence led to the discovery of additional references and new

---

[2] *See also Sunpower Corp. Sys. v. Sunlink Corp.*, 2009 WL 1657987, at *1 (N.D. Cal. June 12, 2009) ("[U]nder the Federal Circuit's interpretation of this District's Patent Local Rules, a failure to establish diligence ends the inquiry.") (applying rules similar to this Court's—in pertinent part: "Amendment of the Infringement Contentions or the Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause.").

obviousness combinations." (Defs.' Mot. at 4-5.) This is insufficient as a matter of law. *See West v. Jewelry Innovations, Inc.*, 2008 WL 4532558, at *3 (N.D. Cal. Oct. 8, 2008) (denying leave to amend invalidity contentions for failure to demonstrate diligence: "Benchmark does not describe in any detail the efforts it undertook to discover additional prior art other than 'diligent inquiries' to unidentified 'contacts.' It does not explain any impediments to finding the Stanley ring more expeditiously. . . . [I]t does not provide any information about when or why it began the inquires, how it inquired, who its contacts in the industry were, or even[] what it inquired about. The burden is on Benchmark to establish diligence, and merely asserting that it made 'diligent' inquiries does not meet this burden.").

Indeed, Defendants cannot show diligence. To show diligence, Defendants must show that they "[could] not reasonably meet the scheduling deadlines" despite the exercise thereof. *MASS Eng'd Design, Inc. v. Ergotron, Inc.*, 250 F.R.D. 284, 286 (E.D. Tex. 2008) ("The good cause standard requires the party seeking relief to show that, despite its exercise of diligence, it cannot reasonably meet the scheduling deadlines.") Here, Defendants did not file their motion and proffer their proposed prior art references until December 18, 2009. In effect, therefore, Defendants' position, which they must prove for their motion to be granted, is that any deadline short of December 18, 2009—a date over two years into this case and nearly one year after their actual deadline for serving invalidity contentions—could not reasonably have been met. Defendants' position is untenable.

First, Defendants' position finds no support in the case law whatsoever. After diligent searches, SRA has not found even one case finding diligence where a defendant sought to amend its invalidity contentions over two years after filing.[3]

---

[3] This representation is based on a review of the case law published through Westlaw.

Second, it is incorrect. The patents-in-suit concern web search technology, and web search technology is at the heart of what Defendants do. Defendants employ many of the field's leading experts, including former academics who have published leading articles in the field. Defendants even own patents in the field. The prior art references that Defendants seek to assert now are not obscure, but are published papers available in academic libraries and discoverable through searches on Defendants' own web search engines. Defendants' delinquency is not the product of an unreasonably early deadline. It is a reflection of their attempt to take the "'rolling' approach to . . . invalidity contentions" that this Court has deemed contrary to the Patent Local Rules. *Nike, Inc. v. Adidas Am. Inc.*, 479 F. Supp. 2d 664, 670 (E.D. Tex. 2007); *see Anascape*, 2008 WL 7180756, at *5 (denying leave to amend invalidity contentions in part because, insofar as the new prior art references "actually are publicly available articles, parties with the vast combined resources of Defendants could have located them with relatively little effort.").

Finally, Defendants' contention that a deadline short of two years could not reasonably be met, if accepted, would set a harmful precedent. Such an unprecedented extension of the law would encourage future litigants to disclose their invalidity contentions in waves so as to "hid[e] their true intentions until late in a case," a practice that this Court has deemed "pernicious." *Id.* And it would protract and increase the cost of litigation by encouraging battles over the limits of such gamesmanship. This is the opposite of the intent of the Patent Local Rules, "one of the goals of [which] is to speed up the litigation process and make it less expensive." *Finisar Corp. v. DirecTV Group, Inc.*, 424 F. Supp. 2d 896, 901 (E.D. Tex. 2006).

In fact, Defendants' motion itself betrays Defendants' recognition that they delayed unreasonably in discovering and disclosing the proposed prior art references. Tellingly, Defendants' motion does not even attempt to affirmatively demonstrate prior diligence. Instead,

for the most part it attempts to justify Defendants' *lack* of diligence by blaming SRA: "Defendants' identification of additional references can be attributed in part to the breadth of SRA's infringement contentions"; likewise, "Any delay by Defendants is largely due to SRA's failure to respond to Defendants' repeated requests that SRA amend its infringement contentions." (Defs.' Mot. at 6-7.) Defendants' argument fails in several respects.

First, it is irrelevant as a matter of law. This Court has specifically held that deficient infringement contentions—even when the product of a plaintiff's gamesmanship—provide no excuse for untimely, incomplete invalidity disclosures: "While Plaintiff has undoubtedly engaged in tactical games in an attempt to gain an advantage by asserting more than 200 claims, having only pared them down to 116 claims at the time Defendants served their Invalidity Contentions, Defendants cannot be excused for neglecting to file complete Invalidity Contentions." *Cummins-Allison*, 2009 WL 763926, at *3. Thus, even on Defendants' view of the facts—which is wrong—Defendants' lack of diligence cannot be excused.

Defendants' finger-pointing is irrelevant for a further reason. Defendants' argument is that their prior art search was hampered by supposedly deficient infringement contentions, but there simply is no connection between the content of a plaintiff's infringement contentions and a defendant's ability to assess invalidity. It is "well settled that an invention is construed . . . in the light of the claims, [and] with reference to the file wrapper of prosecution history in the Patent Office." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 33 (1966). The contents of a plaintiff's infringement contentions are not pertinent. Defendants have not even attempted to show a connection—because there is none—between their complaint against SRA and their own failure.

Second, SRA's infringement contentions were not overbroad.  They were thorough and included detailed claim charts.  Again, not surprisingly, Defendants offer no details explaining how exactly SRA's contentions were deficient.  Instead, Defendants point merely to the length of those contentions—but 650 pages is a reasonable length for SRA's infringement contentions given that SRA asserted roughly 60 claims and provided detailed, compliant claim charts.

Third, Defendants' complaint that SRA asserted roughly 60 claims is disingenuous.  If 60 claims was too many to properly analyze, did Defendants properly analyze even one claim?  No.  Instead, as noted above, Defendants asserted around 100 prior art references and 200 trillion combinations per claim.

Finally, as already noted, Defendants' argument is flatly hypocritical.  Defendants complain that SRA's infringement contentions were 650 pages long.  Defendants' invalidity contentions were 13,000 pages long—twenty times longer than SRA's infringement contentions.  Need any more be said?

The reality is that Defendants did conduct a sweeping search of the alleged prior art, as evidenced by their initial, egregiously overbroad invalidity disclosures.  They had their chance, and they took it—and saved themselves time and money while doing so by failing to comply with this Court's specificity requirements.  And to the extent that their efforts did not yield the several references they now propose, it is because they devoted their resources—and tied up SRA's and the judiciary's resources—to a number of meritless legal adventures, from filing multiple briefs challenging SRA's standing, which arguments this Court decisively denied; to filing an entirely improper mirror-action declaratory judgment suit in the Northern District of California, which suit that court stayed; to attempting to reopen a long-closed proceeding in a California bankruptcy court, which proceeding that court dismissed; and others.

In addition to considering defendants' excuses for failing to meet their invalidity contentions deadline, courts assessing whether to grant leave also consider "the importance of what the Court is excluding, [] the potential prejudice if the Court allows the thing that would be excluded, and [] the availability of a continuance to cure such prejudice." *Ergotron*, 250 F.R.D. at 286. These factors too weigh against Defendants' motion. As to the first, Defendants have failed to establish that the proffered prior art references are important. Defendants' argument is conclusory: "The prior art references that Defendants seek to add to their invalidity contentions are vital to their defenses. Particularly, each new prior art reference either anticipates or, in combination with other references, renders obvious the asserted claims. Further, the more specific combinations of references that Defendants identify are important to their invalidity defenses." (Defs.' Mot. at 7-8.) Such empty assertions—surely in every case the defendant deems its proffered references "vital" and "important"—with no supporting basis whatsoever cannot sustain Defendants' request for an unprecedented extension of its deadlines. In this instance, further, Defendants seek to add ten references on top of the over 100 that they have already introduced. Defendants themselves admit that they were aware of almost half of the proffered references before the original deadline. (*See id.* at 5-6.) If in fact the references were so "vital" and "important," one would have expected Defendants to have introduced them one year ago. In any event, as this Court has ruled, the notion that unasserted prior art is "vital" to a party's defense is negated where, as here, the defendant "was on notice of the rules, had plenty of time to comply, and had sufficient information to guide an appropriate disclosure of information." *Finisar*, 424 F. Supp. 2d at 902. The "importance" prong weighs against Defendants' motion.

The "prejudice" prong also weighs against Defendants' motion. This Court has found prejudice to the plaintiff where "[e]xtensive additional research would be needed, perhaps requiring experts in new fields . . . [and where] [o]bviously there would be the additional expense as the experts and [the plaintiff]'s attorneys reviewed the references and determined how they fit into [the defendant]'s asserted defenses." *Id.* Here, SRA has already spent—wasted—hundreds of thousands of dollars reviewing Defendants' original, grossly overbroad invalidity contentions. This has taken months of expert and attorney time that SRA needed to conduct other aspects of this litigation. Defendants' proposed additional prior art references would require SRA to expend even more expert and attorney resources that it simply cannot allocate to that task. Defendants should not be permitted to force SRA to waste more months and additional thousands, when they already are to blame for causing gross inefficiencies throughout this litigation.

Finally, the "continuance" prong weighs against Defendants' motion. This case has already been on file for over two years.[4] Millions of dollars in litigation expenses have already been spent, on the expectation that the parties' contentions would remain the same as they have since January 2009. Unilateral delays would not serve the interests of justice. As this Court has written, "there is always the possibility of more delay . . . , but extensions of deadlines cannot be the answer to every late disclosure of information. Enough time and money will eventually cure any prejudice caused by late disclosure of information, but that will not result in the just, *speedy, and inexpensive* determination of every action." *Id.* (emphasis in original; internal quotation marks omitted).

---

[4] This case is not "still in its early stages," as Defendants contend (Defs.' Mot. at 1), though SRA admits that it did fight IAC's and Lycos's using that boilerplate language in a recent Joint Motion to Further Extend Scheduling Deadlines.

## CONCLUSION

In short, Defendants' invalidity contentions should be stricken, and Defendants should be required to amend their invalidity contentions within ten days of this Court's order, setting forth, along with specific claim charts, no more than five obviousness combinations and five anticipatory prior art references per claim. Further, Defendants' unprecedented attempt to further expand their noncompliant invalidity contentions should be denied.

Respectfully submitted,

 /s/ Lee L. Kaplan
Lee L. Kaplan
LEAD ATTORNEY
State Bar No. 11094400
**SMYSER KAPLAN & VESELKA, L.L.P.**
700 Louisiana, Suite 2300
Houston, Texas 77002
(713) 221-2323
(713) 221-2320 (fax)
lkaplan@skv.com

Victor G. Hardy
State Bar No. 00790821
Andrew G. DiNovo
State Bar No. 00790594
Adam G. Price
State Bar No. 24027750
Jay D. Ellwanger
State Bar No. 24036522
**DINOVO PRICE ELLWANGER HARDY LLP**
7000 North MoPac Expressway
Suite 350
Austin, Texas 78731
(512) 681-4060
(512) 628-3410 (fax)
vhardy@dpelaw.com

*Of counsel:*

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
**CAPSHAW DERIEUX**
1127 Judson Road, Suite 220
P.O. Box 3999
Longview, TX 75606-3999
(903) 236-9800
(903) 236-8787 (fax)
ccapshaw@capshawlaw.com

Robert M. Parker
State Bar No. 15498000
Robert C. Bunt
State Bar No. 00787165
Charles Ainsworth
State Bar No. 0078352
**PARKER, BUNT & AINSWORTH, P.C.**
100 East Ferguson, Suite 1114
Tyler, Texas 75702
(903) 531-3535
(903) 533-9687 (fax)

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on January 20, 2010.

/s/ Lee L. Kaplan
Lee L. Kaplan

### CERTIFICATE OF CONFERENCE

I hereby certify that counsel has complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The required conferences were conducted by

teleconference between Plaintiff's counsel and Defendants' counsel in late 2009, and the parties' good faith discussions conclusively ended in an impasse due to fundamentally differing interpretations of the requirements imposed on Defendants by P.R. 3-3. Accordingly, this motion is presented to this Court for determination.

_____/s/ Lee L. Kaplan_____
Lee L. Kaplan

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **SOFTWARE RIGHTS ARCHIVE, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 2:07-cv-511-CE** |
| **v.** | § | |
| | § | |
| **GOOGLE INC., YAHOO! INC.,** | § | **JURY TRIAL DEMANDED** |
| **IAC SEARCH & MEDIA, INC., AOL LLC,** | § | |
| **and LYCOS, INC.,** | § | |
| | § | |
| **Defendants.** | § | |

**ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE INVALIDITY
CONTENTIONS AND DENYING DEFENDANTS' MOTION FOR LEAVE TO
AMEND AND SUPPLEMENT INVALIDITY CONTENTIONS**

Before the Court are Plaintiff's Motion to Strike Invalidity Contentions, along with supporting and opposing briefs, and Defendants' Motion for Leave to Amend and Supplement Invalidity Contentions, along with supporting and opposing briefs. After reviewing the parties' briefs, and in view of the pertinent law and facts, the Court hereby GRANTS Plaintiff's Motion to Strike Invalidity Contentions and DENIES Defendants' Motion for Leave to Amend and Supplement Invalidity Contentions.

Accordingly, it is ORDERED that:

1.    Plaintiff's Motion to Strike Invalidity Contentions is GRANTED.

2.    Defendants' Motion for Leave to Amend and Supplement Invalidity Contentions is DENIED.

3.    Defendants' invalidity contentions, served pursuant to P.R. 3-3 on January 23, 2009, are STRICKEN.

4.  Defendants may submit revised invalidity contentions within ten days of this Order, subject to the restrictions that they identify, as to anticipation, no more than five prior art references per asserted claim, and, as to obviousness, no more than five combinations per asserted claim; and that they provide detailed claim charts as to each such identification, containing the specific disclosures required by P.R. 3-3.