IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SOFTWARE RIGHTS ARCHIVE, LLC, § § **Plaintiff,** § § v. § § GOOGLE INC., YAHOO! INC., § IAC SEARCH & MEDIA, INC., AOL LLC, § and LYCOS, INC., § § **Defendants.** § | Civil Action No. 2:07-cv-511-CE JURY TRIAL DEMANDED |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO STRIKE INVALIDITY
CONTENTIONS AND SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION
FOR LEAVE TO AMEND AND SUPPLEMENT INVALIDITY CONTENTIONS**

## CONTENTS

Contents ...................................................................................................................................... i

Table of Authorites .................................................................................................................... ii

Argument & Authorities ............................................................................................................ 2

I.    Reply In Support Of Motion To Strike ........................................................................ 2

II.   Surreply In Opposition To Motion For Leave .............................................................. 7

Conclusion ................................................................................................................................ 11

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arbitron, Inc. v. Int'l Demographics Inc.*,
  2009 WL 166555 (E.D. Tex. Jan. 16, 2009) ........................................................................... 7

*Cummins-Allison Corp. v. SBM Co., Ltd.*,
  2009 WL 763926 (E.D. Tex. Mar. 19, 2009) ..................................................................... 3, 6

*Finisar Corp. v. DirecTV Group, Inc.*,
  424 F. Supp. 2d 896 (E.D. Tex. 2006) ........................................................................... 10, 11

*MASS Eng'd Design, Inc. v. Ergotron, Inc.*,
  250 F.R.D. 284 (E.D. Tex. 2008) ..................................................................................... 8, 10

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
  467 F.3d 1355 (Fed. Cir. 2006) ............................................................................................ 7

*Realtime Data, LLC v. Packeteer, Inc.*,
  2009 WL 4782062 (E.D. Tex. Dec. 8, 2009) ..................................................................... 5, 6

*Saffran v. Johnson & Johnson*,
  2:07 CV 0451 (TJW) (E.D. Tex. Feb. 24, 2009) ........................................................ 2, 4, 5, 8

**OTHER AUTHORITIES**

Local Rule CV-5(a)(3) ............................................................................................................ 13

In its opening brief, SRA explained, point by point, why Defendants' invalidity contentions violate this Court's rules in multiple respects, and why Defendants should not be permitted to violate those rules even further, particularly at this late date. To each point, Defendants have responded with either a misstatement or, more often, conspicuous silence. Despite Defendants' claims, the following are facts:

- Defendants' invalidity contentions are 13,000 pages long.

- They identify trillions of potential obviousness combinations and reserve the right to assert countless further undisclosed combinations.

- They purport to set forth mere "examples," rather than a complete list, of prior art items on which Defendants intend to rely.

- They purport to "combine[] [prior art references] with . . . information known to persons skilled in the art."

- They purport to "reserve the right to rely on any . . . combination of any prior art disclosed herein."

- They contain thousands of paragraphs of meaningless boilerplate.

These are all violations of this Court's rules. Therefore, this Court should strike Defendants' invalidity contentions. Furthermore, as to Defendants' motion to expand their contentions still further:

- Defendants' proposed supplementation would only expand their overbroad contentions and compound their violations.

- Defendants did not file their motion to assert additional prior art and obviousness combinations until over two years after this case was filed. Defendants cite not one case—and SRA is aware of none—where this Court has ever held "diligence" satisfied under such circumstances.

- Defendants have not shown that they needed all the way until December 18, 2009—413 days after service of infringement contentions, where most defendants get only 45 days—to reasonably comply with their duties. To the contrary, they admit that they were able to conduct a "sweeping search" by the original deadline of January 23, 2009, a fact further evidenced by their massive disclosure on that date, which included 13,000 pages of claim charts and over 100 prior art references.

- Defendants' violations have already seriously prejudiced SRA in terms of both time and money, and at this late stage—85% of the way to SRA's first claim construction brief—expanded invalidity contentions would cause even more grievous injury.

Therefore, this Court should deny Defendants' motion for leave to supplement their invalidity contentions.

## ARGUMENT & AUTHORITIES

### I.    REPLY IN SUPPORT OF MOTION TO STRIKE

SRA's opening brief listed, point by point, the multiple respects in which Defendants' invalidity contentions violate this Court's rules. Defendants fail to rebut even one such point. In fact, in the majority of instances, Defendants do not even attempt to do so:

- SRA cited this Court's rulings striking contentions that were overly lengthy. *See* SRA's Brief at 9; Order at 1-2, *Saffran v. Johnson & Johnson*, 2:07 CV 0451 (TJW) (E.D. Tex. Feb. 24, 2009) (striking contentions nearly 800 pages long). SRA then noted that Defendants' contentions are 13,000 pages long and assert 81, 110, and 111 items of prior art against the '352, '494, and '571 patents, respectively. *See* SRA's Brief at 11.

Defendants make three failed counterarguments. First, Defendants claim that "[i]n *Saffran*, the court did not hold the defendants' invalidity contentions were somehow deficient due to their length . . . ." Defs.' Brief at 14. This is untrue. Judge Ward wrote, "The defendants' almost 800 pages of 'Invalidity Contentions' do not put the plaintiffs on real or useful notice. . . . The 'Invalidity Contentions' are therefore STRICKEN." Order at 2, *Saffran*, 2:07 CV 0451 (TJW). Judge Ward would not have noted pointedly that the contentions were "almost 800 pages" long had that not been a basis for their deficiency.

Second, Defendants claim that "Defendants' invalidity contentions are exactly 81 pages long . . . ." Defs.' Brief at 14. This is hogwash. Defendants' claim charts are a part of their

2

invalidity contentions, and they know it. And, taken together, those contentions are over 13,000 pages long. In fact, Defendants' argument smacks of hypocrisy. Defendants' claim that their "invalidity contentions are exactly 81 pages long" appears on page 14 of their brief. On page 13 of their brief—in the directly preceding paragraph—they state that "SRA served deficient infringement contentions that spanned over 600 pages," a claim based on including claim charts in the length calculation. Defs.' Brief at 13.

Third, Defendants claim that "Defendants' claim charts are necessarily quite long because SRA has alleged that five different defendants infringe 64 claims of three different patents." Defs.' Brief at 15. Defendants' claim is incorrect as a matter of law. As SRA has already explained, the breadth of a plaintiff's infringement contentions is irrelevant to the sufficiency of a defendant's invalidity contentions. *Cummins-Allison Corp. v. SBM Co., Ltd.*, 2009 WL 763926, at *3 (E.D. Tex. Mar. 19, 2009) ("While Plaintiff has undoubtedly engaged in tactical games in an attempt to gain an advantage by asserting more than 200 claims, having only pared them down to 116 claims at the time Defendants served their Invalidity Contentions, Defendants cannot be excused for neglecting to file complete Invalidity Contentions."). Moreover, it is telling that, faced with *Saffran*'s contrary holding, Defendants have cited not one case, from any jurisdiction, allowing 13,000 pages of invalidity contentions, though many plaintiffs assert 64 claims or more. Defendants' argument is also disingenuous. To claim that 13,000 pages of invalidity contentions are "necessary," while 660 pages of infringement contentions—that is, a document 5% the length—are unduly "vast," is more than a little inconsistent.

Finally, Defendants' assertion is factually wrong. Even if their claim charts were properly detailed, Defendants would not need 13,000 pages to disclose their contentions, for it

3

does not take over 200 pages per claim (even setting aside the considerable overlaps among the assertions) to assert invalidity in a direct, forthright, and compelling fashion. To take just one representative example, it was not "necessary" for Defendants to assert over 60 anticipation references and 221 trillion obviousness combinations for Claim 26 of the '352 Patent alone. Instead, Defendants did so by choice, and the overall length of their contentions is really only the result of their desire to bury their true invalidity positions among countless baseless assertions that they have no intention of pursuing at trial. In any event, Defendants' claim charts are grossly deficient. Were thousands of pages really "necessary," given that Defendants freely inserted thousands of paragraphs of boilerplate into their claim charts, or given that Defendants happily resorted to pages of meaningless lists of references, as the chart on pages 4 and 5 of SRA's brief shows? No. Defendants sought to avoid giving fair notice to SRA and also sought to drown SRA in an ocean of potential invalidity assertions, so that SRA cannot find Defendants' true positions.

- SRA cited case law from this Court striking contentions that failed to identify the specific combinations that the defendants intend to use at trial. Order at 2, *Saffran*, 2:07 CV 0451 (TJW) ("The defendants' current 'Invalidity Contentions' are an attempt to end run the rules. They do not specifically identify combinations of references that the defendants anticipate using at trial . . . ."). SRA then noted that Defendants identify trillions of potential combinations and then reserve the right to go even beyond those bounds.[1]

---

[1] The following explains why the number of potential combinations asserted by Defendants runs into the trillions: There are 63 references to choose from against the first element, 60 against the second element, and so on. To understand the calculation, one must trace the possible combinations in order, starting with the first element. One must then make a first choice by picking one of the 63 references cited against the first element. One must then make a second choice by picking one of the 60 references cited against the second element. For every first choice there are 60 possible second choices because one could pick any of the 60 references cited against the second element. Now, since one can make 63 such first choices, there are 63 x 60 possible combinations, or 1,320. This process continues when one adds a third element. When the process is complete, a choice will have been made for

4

Defendants' sole counterargument is this: "Defendants . . . provided more than a dozen claim charts that specifically describe the combinations that render obvious one or more of the claims of the patents-in-suit." Defs.' Brief at 15. This is conclusory, and necessarily so, because there are no facts to support it. There are no "specific descriptions" of what combinations Defendants intend to assert at trial. To the contrary, as explained in SRA's opening brief, Defendants start with charts crammed with references for element after element, along with the instruction that "combinations of two or more of the references identified in the chart [] render the claims obvious." SRA's Brief at 5. Then, Defendants place layer upon layer of qualifications until they have effectively asserted an infinite number of potential combinations.

- SRA cited case law from this Court striking contentions that purported to set forth mere examples, rather than a complete list, of prior art items on which the defendants intended to rely. Order at 2, *Saffran*, 2:07 CV 0451 (TJW) ("[T]hey include language purporting to make the contentions merely illustrative."). SRA then noted that Defendants do exactly that: "The accompanying invalidity claim charts list specific examples of where prior art references disclose, either expressly or inherently, each limitation of the asserted claims . . . . The references, however, may contain additional support upon which Defendants may rely." SRA's Brief at 11 (quoting Inv. Discl. at 4). Defendants do not even attempt to contest this violation.

- SRA cited case law from this Court striking contentions that combined prior art references with "information known to persons skilled in the art." *See Realtime Data, LLC v. Packeteer, Inc.*, 2009 WL 4782062, at *3 (E.D. Tex. Dec. 8, 2009) ("[T]he purpose of the Patent Rules is to avoid reliance on the amorphous knowledge of one of ordinary skill in the art."). SRA then noted that Defendants do exactly that: "[E]ach prior art reference may be combined

---

every single element of the claim. Thus, the final number of combinations is the multiple of all those potential choices: 63 x 60 x 63 x 63 x63 x 61 x 63 x 63 = 221,639,038,427,440.

5

with . . . information known to persons skilled in the art at the time of the alleged invention . . . ." SRA's Brief at 11 (quoting Inv. Discl. at 19). Again, Defendants do not even attempt to contest this violation.

- SRA cited case law from this Court annulling language that purports to reserve the right to combine any charted references. *See Realtime Data*, 2009 WL 4782062, at *3 ("[T]he Court does not find that reserving the right to combine any charted prior art references offers a plaintiff sufficient notice to adequately rebut a defendant's largely undisclosed invalidity theories."). SRA then noted that Defendants do exactly that: "Defendants reserve the right to rely on any . . . combination of any prior art disclosed herein." SRA's Brief at 11 (quoting Inv. Discl. at 20). Again, Defendants do not even attempt to contest this violation.

- SRA cited case law from this Court striking contentions that failed to provide notice of defendants' specific invalidity arguments for each element of each challenged claim. *See Realtime Data*, 2009 WL 4782062, at *3 ("Citrix was required to submit charts for any asserted prior art reference providing notice as to how each claim element is met—claim-by-claim and element-by-element."); *Cummins-Allison*, 2009 WL 763926, at *4 ("Defendants are required to submit Invalidity Charts to provide notice of how each claim element is met. Failure to provide the specific reference that allegedly reads on a claim limitation of the '806 Patent does not place Plaintiff on sufficient notice."). SRA then noted that Defendants' anticipation contentions employ, thousands of times, the following meaningless boilerplate:

> Disclosed either expressly or inherently in the teachings of the reference and its incorporated disclosures taken as a whole, or in combination with the state of the art at the time of the alleged invention, as evidenced by substantial other references identified in Defendants' P.R. 3-3 statement and accompanying charts. Rather than repeat those disclosures here, they are incorporated by reference into this chart.

6

SRA's Brief at 12 (quoting De Bra Claim Chart at 1-28; Bichteler Claim Chart at 1-13). Again, Defendants do not even attempt to contest this violation.

In short, because Defendants' invalidity contentions violate this Court's rules in instance after instance, this Court should strike those contentions and require Defendants to amend, if at all, as requested in SRA's opening brief.

## II.  SURREPLY IN OPPOSITION TO MOTION FOR LEAVE

Defendants have also failed to rebut the fatal deficiencies in their request to further expand their 13,000-page invalidity disclosures. First, as noted, Defendants have failed to show how their original disclosures are anything but grossly defective. On this basis alone, this Court should deny their request to add still more violations to their portfolio.

Defendants also have not shown diligence.[2] For example, Defendants claim that they "timely served their invalidity contentions on January 23, 2009 . . . ." Defs.' Brief at 4. This is irrelevant. Defendants apparently want some credit for complying with the Court's deadline—which, Defendants conveniently omit, was already twice extended—but to do so would be difficult even if it were relevant, given that Defendants now claim that they needed almost another year to do an adequate job.

Second, and prominently featured in their brief, Defendants claim that their subsequent prior art search and present motion to supplement were done at SRA's request and for SRA's benefit. For example, "Unbelievably, SRA opposes this amendment even though SRA itself had

---

[2] Apparently recognizing their lack of diligence, Defendants try to dispute that showing diligence is really a requirement for obtaining leave. *See, e.g.,* Defs.' Brief at 11 ("[T]he lack of prejudice to the opposing party may establish good cause for amendment even if the amending party was *not* diligent with respect to its invalidity contentions." (emphasis in original)). Defendants' attempt fails. The Federal Circuit has considered these very rules (on appeal from the Northern District of California) and has both recognized and blessed that they "require[]" a showing of diligence: "We agree . . . that 'good cause' requires a showing of diligence. . . . The burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006). This Court has done the same: "A 'good cause' analysis in a motion to amend must include a determination of diligence on the part of the movant." *Arbitron, Inc. v. Int'l Demographics Inc.*, 2009 WL 166555, at *1 (E.D. Tex. Jan. 16, 2009).

7

repeatedly requested that Defendants provide amended obviousness combinations." Defs.' Brief at 1. Likewise, "Defendants' motion for leave to amend and supplement (Dkt. No. 198) seeks to provide the very amended obviousness combinations that SRA previously requested." *Id.* at 3. This of course has nothing to do with diligence. But even apart from that, Defendants' claim of disbelief and air of benevolence are laughable. SRA did repeatedly request Defendants to *narrow*—by orders of magnitude—their invalidity disclosures so that they would actually disclose something of use. But SRA never requested Defendants to seek out *more* prior art and obviousness combinations and *add* to their grossly overbroad invalidity disclosures. For Defendants to claim otherwise is absurd and contrary to the record. For example, in March 2009, SRA's counsel wrote, "[W]e request that you . . . amend your disclosures in accordance with the *Saffran* decision. We will not oppose the amendment provided that you: (1) immediately seek leave to amend, and (2) do not add additional references to the asserted prior art or otherwise expand the scope of your invalidity defenses." 3/11/09 Hardy-Walsh Letter, att. to SRA's Brief as Ex. 5, at 2. To the extent Defendants really believe, through an astonishing flight of fancy, that they "spent several months (and many thousands of dollars)" digging up new prior art and new obviousness combinations all for SRA's benefit, SRA must respectfully decline their generosity. Defs.' Brief at 5.

Defendants' brief noticeably fails to address the actual legal requirement for diligence: a showing that they "[could] not reasonably meet the scheduling deadlines"—that is, a showing that they could not reasonably have met any deadline before December 18, 2009—despite the exercise thereof. *MASS Eng'd Design, Inc. v. Ergotron, Inc.*, 250 F.R.D. 284, 286 (E.D. Tex. 2008). SRA still has not found, and Defendants have not cited, even one case from this Court holding that a defendant can delay over two years in seeking to add prior art and obviousness

combinations and still be deemed diligent.[3] Defendants' requested extension of the "diligence" concept is unprecedented in this Court.

Defendants also still provide no specifics whatsoever regarding their supposed diligence: What prior art searches did they conduct between November 2007 and December 2009? What prevented Defendants from conducting those searches any sooner than December 18, 2009? Why would a scheduling deadline of February 2009, or May 2009, or September 2009, or even November 2009 have been "unreasonable"? Rather than actually presenting relevant facts in support of their unprecedented request, Defendants simply state that they "spent several months (and many thousands of dollars) developing revised invalidity contentions that address the concerns raised in SRA's March and July 2009 letters." Defs.' Brief at 5. As already explained, SRA has never asked Defendants, by letter or otherwise, to dig up new prior art and obviousness combinations. In any event, Defendants' vague excuse for their delay is insufficient.

Thus, as in their opening brief, Defendants ultimately resort simply to blaming SRA for their *lack* of diligence. Specifically, they blame SRA for declining to submit revised infringement contentions upon their demand. *See* Defs.' Brief at 4. But, quite apart from the fact that SRA's original contentions were perfectly adequate, Defendants fail to explain how SRA's doing nothing, and changing none of the conditions of Defendants' search, somehow undermined Defendants' diligence. Given that SRA's contentions were exactly the same from the date they were served (October 31, 2008) to the date of Defendants' motion (December 18, 2009), Defendants' complaint amounts merely to a claim that those contentions were all along to blame for Defendants' needing 413 days to complete their invalidity contentions, where most

---

[3] SRA's statement in its opening brief that it had "not found even one case finding diligence where a defendant sought to amend its invalidity contentions over two years after filing" was based on a review of this Court's case law. SRA's Brief at 16. Inadvertently, SRA did not make that limitation clear in its brief and thus made a broader statement than intended which, as Defendants point out, was inaccurate.

defendants in this Court get just 45 days. Defendants' brief is devoid of factual details, much less case law, explaining why SRA's supposedly "broad" infringement contentions justify such an unprecedented nine-fold deadline extension. Defs.' Brief at 8.

Defendants try to spin the fact that they conducted a "sweeping search" before their original deadline of January 23, 2009 into a reason to grant them a further eleven-month extension after that date. Defs.' Brief at 7. But Defendants miss the point. Their admission that they were able to conduct a "sweeping search" by the original deadline is an admission that they were able to "reasonably meet the scheduling deadlines," and thus no extension is warranted. *Ergotron*, 250 F.R.D. at 286. What Defendants have not shown, and cannot show, is that they were *unable* to conduct a sweeping search until December 18, 2009.

Defendants have also failed to carry their burden regarding the importance, prejudice, and continuance prongs of the analysis. As to importance, Defendants flatly ignore this Court's ruling that unasserted prior art should not be deemed vital to a party's defense where, as here, the defendant "was on notice of the rules, had plenty of time to comply, and had sufficient information to guide an appropriate disclosure of information." *Finisar Corp. v. DirecTV Group, Inc.*, 424 F. Supp. 2d 896, 902 (E.D. Tex. 2006). Nor have Defendants explained why, if the proposed additions are indeed as "powerful" as they claim, they did not take the time to seek them out until over two years into the case. Defs.' Brief at 11.

As to prejudice, Defendants argue that this is still an "early stage of the case" and that "the time and expense of reviewing additional references" cannot be "sufficient to establish 'prejudice.'" Defs.' Brief at 9. Defendants are wrong. This case was filed 27 months ago. Almost 85% of the time between filing and the due date for SRA's first claim construction brief has elapsed. During this period, SRA has invested thousands of hours and hundreds of

10

thousands of dollars predicting Defendants' invalidity positions without proper guidance—a burden created exclusively by Defendants' failure to comply with this Court's disclosure requirements. At the same time, as SRA has detailed in its Motion to Compel against Google (Docket No. 194), SRA has also wasted enormous amounts of time and money fighting needless discovery battles, and litigating without proper disclosures, on the infringement side. Therefore, SRA has already been heavily prejudiced in this case by Defendants' own discovery violations. At this stage, clearer, narrower invalidity contentions as requested in SRA's opening brief would be helpful. But forcing SRA to decipher yet more prior art and more obviousness combinations—numbering in how many additional billions, or trillions?—after all that has transpired, would only compound the prejudice to SRA.

Finally, Defendants do not even attempt to show that the "continuance" factor supports their motion. To the contrary, as explained in SRA's opening brief, given the lengthy history of this case and the resources already expended based on the expectation that the parties' contentions would remain the same as they have since January 2009, unilateral delays would not serve the interests of justice. As this Court has written, "there is always the possibility of more delay . . . , but extensions of deadlines cannot be the answer to every late disclosure of information. Enough time and money will eventually cure any prejudice caused by late disclosure of information, but that will not result in the just, *speedy, and inexpensive* determination of every action." *Finisar*, 424 F. Supp. 2d at 902 (emphasis in original; internal quotation marks omitted).

## CONCLUSION

In short, this Court should strike Defendants' invalidity contentions and require them to amend, if at all, within ten days of this Court's order, setting forth, along with specific claim charts, no more than five obviousness combinations and five anticipatory prior art references per

11

claim. Further, Defendants' unprecedented attempt to further expand their noncompliant invalidity contentions should be denied.

Respectfully submitted,

 /s/ Lee L. Kaplan
Lee L. Kaplan
LEAD ATTORNEY
State Bar No. 11094400
**SMYSER KAPLAN & VESELKA, L.L.P.**
700 Louisiana, Suite 2300
Houston, Texas 77002
(713) 221-2323
(713) 221-2320 (fax)
lkaplan@skv.com

Victor G. Hardy
State Bar No. 00790821
Andrew G. DiNovo
State Bar No. 00790594
Adam G. Price
State Bar No. 24027750
Jay D. Ellwanger
State Bar No. 24036522
**DINOVO PRICE ELLWANGER HARDY LLP**
7000 North MoPac Expressway
Suite 350
Austin, Texas  78731
(512) 681-4060
(512) 628-3410 (fax)
vhardy@dpelaw.com

*Of counsel:*

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
**CAPSHAW DERIEUX**
1127 Judson Road, Suite 220
P.O. Box 3999
Longview, TX 75606-3999
(903) 236-9800
(903) 236-8787 (fax)

ccapshaw@capshawlaw.com

Robert M. Parker
State Bar No. 15498000
Robert C. Bunt
State Bar No. 00787165
Charles Ainsworth
State Bar No. 0078352
**PARKER, BUNT & AINSWORTH, P.C.**
100 East Ferguson, Suite 1114
Tyler, Texas 75702
(903) 531-3535
(903) 533-9687 (fax)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 9, 2010.

  /s/ Lee L. Kaplan  
Lee L. Kaplan